OFICINA DE LA PROCURADORA DEL PACIENTE, agencia peticionaria, *v.* ASEGURADORA MCS, IPA 603, promovida, y MCS HEALTH MANAGEMENT OPTIONS, INC., recurrida.

*Número:* CC-2004-356 *Resuelto:* 22 de septiembre de 2004

*Roberto J. Sánchez Ramos*, procurador general, abogado de la parte peticionaria; *Israel Santiago Lugo* y *Awilda M. Broco Rodríguez*, abogados de la parte recurrida; *Luz T. Amador*, procuradora del paciente, peticionaria.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

La Oficina de la Procuradora del Paciente Beneficiario de la Reforma de Salud (Oficina de la Procuradora) inició una investigación a raíz de un reportaje publicado en la prensa en torno a ciertos problemas que enfrentó la madre de una menor paciente de cáncer para recibir servicios especializados a través de la Reforma de Salud. La mencionada investigación fue realizada por la división de investigación y querellas de la aludida agencia gubernamental.

De la investigación realizada por dicha división se determinó, en síntesis y en lo aquí pertinente, que la recurrida MCS Health Management Options, Inc. (MCS) incumplió con su obligación de informar y orientar a la madre de la menor asegurada acerca de sus derechos y de los procedimientos para obtener referidos a especialistas, conforme se dispone en la Carta de Derechos y Responsabilidades del Paciente, Ley Núm. 194 de 25 de agosto de 2000 (24 L.P.R.A. sec. 3041 *et seq.*).

Como resultado de la referida investigación, la Oficina

de la Procuradora emitió una orden, fechada 12 de marzo de 2003, donde requirió de MCS que sometiera, para la aprobación de ésta, un plan de acción que asegurase la implantación de los procedimientos siguientes: (i) procedimiento para la autorización de referidos a especialistas para evitar referidos tardíos; (ii) procedimiento para autorizar estudios especializados, pruebas diagnósticas y cubierta especial que incluyera la existencia y el mantenimiento del registro de dichos servicios; (iii) procedimiento establecido para admisiones de emergencia en aquellos casos que llegan al consultorio médico, y (iv) procedimiento establecido para admisiones electivas.

Como parte de la orden notificada por la Oficina de la Procuradora, se le apercibió a MCS de su derecho a solicitar, dentro del plazo de quince días —contado a partir del recibo de la orden— una vista administrativa o, en su lugar, enviar por escrito sus alegaciones y prueba para sostener la improcedencia de la acción tomada. De igual forma, se le apercibió de su derecho a comparecer asistido por abogado, así como de presentar evidencia. La referida orden no impuso, ni advirtió, sobre penalidades o sanciones administrativas de ningún tipo.

Así las cosas, MCS presentó una Moción de Desestimación ante la Oficina de la Procuradora dentro del plazo provisto para solicitar una vista administrativa. En esta moción argumentó que las actuaciones de la Oficina de la Procuradora, referentes a la investigación de la querella y la orden emitida, fueron realizadas en forma *ultra vires* y en violación al debido proceso de ley; ello en vista de que en el presente caso la aludida agencia alegadamente actuó sin haber antes promulgado un reglamento que delimitara los procedimientos y derechos de las partes, según requerido por su ley habilitadora. De esta forma, MCS solicitó de la Oficina de la Procuradora que desestimara la acción incoada en su contra y que dejase sin efecto la orden emitida el 12 de marzo de 2003.

La Oficina de la Procuradora, mediante escrito a esos efectos, rebatió la moción de desestimación presentada por MCS. En el referido escrito dicha agencia aceptó que no se había promulgado un reglamento que rigiera los procedimientos adjudicativos que se celebran ante sí. Sin embargo, argumentó que ello no era motivo para declarar sus actuaciones *ultra vires*, toda vez que éstas estuvieron amparadas en su estatuto habilitador y que, en el presente caso, ésta brindó a MCS todas las garantías del debido proceso de ley en conformidad con la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101 *et seq.*, y nuestro ordenamiento constitucional. Arguyó, además, que el cumplir con las aludidas garantías —lo cual ésta había hecho— era precisamente lo que se buscaba al requerir que las agencias con poderes adjudicativos promulgasen reglamentos.

La aseguradora MCS presentó una "oposición" a la réplica a su moción de desestimación presentada por la Oficina de la Procuradora. Adujo, en síntesis, que su reclamo sobre la violación al debido proceso de ley se refería, no sólo a la vertiente procesal de dicha garantía, sino además a su vertiente sustantiva. Así pues, planteó que la Oficina de la Procuradora, al no aprobar un reglamento que delimitase las obligaciones de los proveedores y aseguradoras de la Reforma de Salud, hacía imposible que dichas entidades conocieran las actuaciones u omisiones que constituyen una violación de ley.

En respuesta a esta última oposición, la Oficina de la Procuradora presentó un escrito titulado "Tríplica a 'Oposición a Moción en Réplica a Moción de Desestimación' ". Mediante este escrito, la referida agencia arguyó que el planteamiento de MCS referente al debido proceso de ley sustantivo carecía de méritos, ello en vista de que la ley orgánica de la Oficina de la Procuradora claramente establecía las obligaciones y los deberes de los proveedores y

las aseguradoras de servicios de salud médico-hospitalarios para con los pacientes de la Reforma de Salud. Finalmente, la Oficina de la Procuradora dictó una orden mediante la cual declaró "no ha lugar" la moción de desestimación presentada por MCS. Además, señaló Conferencia sobre el Estado de los Procedimientos, para el 12 de agosto de 2003.(1)

Inconforme con tal dictamen, MCS acudió, mediante un recurso de revisión, al el Tribunal de Apelaciones. Alegó, en síntesis, que la Oficina de la Procuradora incidió al determinar que sus actuaciones referentes a la investigación y orden emitida en el presente caso fueron correctas y no violatorias del debido proceso de ley, no obstante dicha oficina carecer de un reglamento que delimitara su autoridad y definiera los criterios bajo los cuales se investigarían las violaciones a la Carta de Derechos y Responsabilidades del Paciente.(2)

La Oficina de la Procuradora solicitó la desestimación del Recurso de Revisión, alegando: (i) que el foro apelativo intermedio carecía de jurisdicción para revisar la decisión administrativa en cuestión debido a que se trataba de una orden de naturaleza parcial y no se configuró la única excepción reconocida a la exigencia de que únicamente las revisiones u órdenes finales de las agencias administrativas son revisables, esto es, cuando resulta clara la falta de jurisdicción de la agencia, y (ii) que el recurso presentado era académico toda vez que MCS, alegadamente, había sometido a la Oficina de la Procuradora la documentación que esta última le requirió mediante la orden que se intentaba revisar.

---

(1) El 5 de agosto de 2003 la querellada MCS Health Management Options, Inc. (MCS) presentó una moción de reconsideración ante la Oficina de la Procuradora. En cuanto a esta moción, el 7 de agosto de 2003 la referida Oficina emitió una orden en la que dictaminó "Nada que proveer".

(2) Sostuvo, además, que dicha agencia erró "al no incluir en su resolución final sobre la Moción de Desestimación las determinaciones de hechos y conclusiones de derecho exigidas por la Ley de Procedimiento Administrativo Uniforme". Véase el Anejo I de la Petición de *certiorari*, pág. 4, presentada por la Oficina de la Procuradora del Paciente Beneficiario de la Reforma de Salud (Oficina de la Procuradora).

MCS se opuso a la solicitud de desestimación del recurso de revisión presentada por la Oficina de la Procuradora, alegando, en síntesis, que si bien era cierto que había sometido cierta documentación a la Oficina de la Procuradora, ello se hizo con el entendimiento de que no estaba renunciando al derecho de continuar con el recurso de revisión y, además, que no sometió toda la documentación requerida por la Oficina de la Procuradora. Argumentó, además, que aun cuando la resolución cuya revisión se solicitaba era una de naturaleza parcial, el planteamiento era uno de índole constitucional que no requería de la pericia administrativa. Por tal razón, arguyó que no era necesario agotar los remedios administrativos.(³) El Tribunal de Apelaciones emitió una resolución denegatoria de la moción de desestimación presentada por la Oficina de la Procuradora, concediendo a dicha parte el término de treinta días para presentar su alegato.

Inconforme con dicho proceder, la Oficina de la Procuradora recurrió ante este Tribunal, vía recurso de *certiorari*, imputándole al Tribunal de Apelaciones haber errado al

> … denegar la Solicitud de Desestimación porque dicho foro carece de jurisdicción para revisar una decisión administrativa de naturaleza parcial emitida por la Oficina de la Procuradora del paciente, ello en virtud de la norma estatutaria que sólo permite que se inste recurso de revisión judicial una vez la agencia emite una orden o resolución final, sin que esté presente, en este caso, la única excepción reconocida a dicha norma (cuando la agencia claramente carece de jurisdicción para atender el asunto ante sí).
>
> … denegar la Solicitud de Desestimación predicada en la academicidad de la controversia planteada en el recurso de revisión administrativa presentado por MCS, a pesar de haberse argumentado y evidenciado que la parte co-promovida recurrida cumplió con la orden cuya validez impugnó en alzada al someter los documentos requeridos por la Oficina de la

---

(³) El 30 de enero de 2004, la Oficina de la Procuradora replicó la oposición a la solicitud de desestimación incoada por MCS. En respuesta, MCS presentó un escrito titulado "Dúplica a 'Réplica a Oposición a Solicitud de Desestimación del Recurso de Revisión' ".

Procuradora del Paciente mediante su Orden de 12 de marzo de 2003, a los fines de que éstos fuesen evaluados de conformidad con los propósitos de la pesquisa realizada por la agencia.[4] Petición de *certiorari*, pág. 11.

Atendida la petición de *certiorari*, le concedimos veinte días a la parte recurrida para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar sentencia revocatoria de la resolución emitida por el Tribunal de Apelaciones. Contando con la comparecencia de las partes, y estando en condición de resolver el recurso, procedemos a así hacerlo.

## I

A. La Oficina de la Procuradora del Paciente Beneficiario de la Reforma de Salud es una entidad creada mediante la Ley Núm. 11 de 11 de abril de 2001, mejor conocida como la Ley Orgánica de la Oficina del Procurador del Paciente Beneficiario de la Reforma de Salud, 3 L.P.R.A. sec. 1981 *et seq.*

La referida disposición estatutaria le impone a la Oficina de la Procuradora la responsabilidad de "garantizarle a los pacientes beneficiarios de la Reforma de Salud el cumplimiento de la Carta de Derechos y Responsabilidades del Paciente" y de "atender y solucionar los problemas, necesidades y reclamos de dichos pacientes asegurados". 3 L.P.R.A. sec. 1982.

Por su parte, la mencionada Carta de Derechos y Responsabilidades del Paciente (Carta de Derechos) está consagrada en la Ley Núm. 194, ante. Mediante esta pieza legislativa se establecieron los derechos de todo paciente, usuario o consumidor de servicios y facilidades de salud médico-hospitalarias. De particular importancia al caso de

---

[4] Nos limitamos a resolver el primer señalamiento de error planteado ante nos en vista de que la Oficina de la Procuradora no nos ha puesto en posición de evaluar el planteamiento de error referente a la academicidad.

autos es que en dicha ley se estableció que éstos tienen derecho a

[r]ecibir información cierta, confiable, oportuna y suficiente, de fácil comprensión y adecuada a sus necesidades, con relación a sus planes de seguro de salud y a las facilidades y profesionales de salud que haya seleccionado o cuyos servicios solicite, de manera que esté en condiciones de tomar decisiones bien informadas e inteligentes en cuanto a su selección de planes, facilidades y profesionales y en cuanto a los servicios de salud que requiere. 24 L.P.R.A. sec. 3043.

La citada Carta de Derechos establece, además, que todo paciente tiene derecho a recibir información referente a "los procedimientos que gobiernan el acceso a especialistas y servicios de emergencia".(5) 24 L.P.R.A. sec. 3055. Para llevar a cabo las funciones asignadas a la Oficina de la Procuradora por su ley habilitadora, ésta creó el cargo de Procuradora del Paciente Beneficiario de la Reforma de Salud (Procuradora), atribuyéndole a ésta ciertas facultades y deberes.(6) Entre éstas, la Procuradora tiene la facultad y el deber de

[p]rocesar querellas presentadas por los pacientes, sus padres o tutores, relacionadas con las entidades privadas y agencias públicas que son proveedores y que prestan servicios de salud, así como contra las entidades aseguradoras a quienes

---

(5) De igual forma, en el Art. 17 de la Carta de Derechos y Responsabilidades del Paciente, 24 L.P.R.A. sec. 3055, se establece que todo paciente, asegurado, usuario o consumidor de servicios puede presentar una querella administrativa ante el Departamento de Salud cuando entienda que se le han violado derechos bajo la referida legislación. Asimismo, dicho artículo ejemplifica los asuntos que pueden ser motivo para la presentación de una de estas querellas. Entre los motivos que detalla para la presentación de una querella está el que "[u]na entidad aseguradora no le inform[e] al paciente los servicios de salud cubiertos por su plan de cuidado de salud". 24 L.P.R.A. sec. 3055. Cabe recalcar que la citada Carta de Derechos se hizo parte de la Ley Orgánica de la Oficina de la Procuradora.

(6) Según su Exposición de Motivos, esta ley tiene como propósito el crear el cargo del Procurador del Paciente Beneficiario de la Reforma de Salud. Así pues, se dispuso que dicho funcionario tendría la responsabilidad de velar por los derechos de los pacientes que reciben los servicios de salud contratados por el Gobierno del Estado Libre Asociado de Puerto Rico, según éstos se exponen en la Ley Núm. 194 de 25 de agosto de 2000, mejor conocida como la "Carta de Derechos y Responsabilidades del Paciente". Véase 2001 (Parte 1) Leyes de Puerto Rico 59.

se les ha pagado la prima correspondiente a dichos pacientes. 3 L.P.R.A. sec. 1985.

■ La aludida pieza legislativa faculta a la Procuradora a solicitar informes sobre quejas y querellas tanto de las aseguradoras como de la Administración de Seguros de Salud, a celebrar vistas administrativas conforme a las disposiciones de la citada Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, a tomar juramento y declaraciones por sí o por sus representantes, a inspeccionar instalaciones, emitir órdenes para la comparecencia de testigos y a requerir la presentación de documentos pertinentes a una investigación o querella ante su consideración. Véase 3 L.P.R.A. sec. 1985(h) a (*l*).

■ El Art. 7 de la Ley Orgánica de la Oficina de la Procuradora, 3 L.P.R.A. sec. 1988, dispone que la Procuradora, en aquellos casos en que decida investigar una querella, deberá notificarlo a la agencia pública o a la entidad privada querellada, según sea el caso, expresando los hechos alegados en ésta y la ley que le confiere potestad para investigar.

■ La referida ley, además, ordena a la Oficina de la Procuradora la promulgación de un reglamento para fines de su funcionamiento interno y para la implantación de dicha ley. En específico, esta pieza legislativa dispone que el reglamento detallará expresamente los deberes y las obligaciones que dicha ley impone a los aseguradores, facilidades médico-hospitalarias y proveedores.

■ B. Conforme establece el Art. 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24y),[7] el Tribunal de Apelaciones tendrá competencia para revisar las decisiones, órdenes y

---

[7] Ley Núm. 201 de 22 de agosto de 2003 (4 L.P.R.A. sec. 24 *et seq.*).

resoluciones finales de los organismos o agencias administrativas.[8]

Es de notar, por otro lado, que la Ley Orgánica de la Oficina de la Procuradora prescribe que la revisión de una orden o resolución emitida por dicha Oficina se llevará a cabo de acuerdo con las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico. La Sec. 4.2 de la referida ley establece, en lo aquí relevante, que

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título ....
>
> . . . . . . . .
>
> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. 3 L.P.R.A. sec. 2172.

De lo antes expuesto se puede colegir que son dos los requisitos para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones. Éstos son: (i) que la parte adversamente afectada por la orden

---

[8] A esos efectos, el inciso (c) del Art. 4.006 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24y(c)) específicamente dispone, en lo aquí pertinente, que:

"Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, *de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas.* En estos casos, la mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa ni será obligatoria la comparecencia del Estado Libre Asociado ante el foro apelativo a menos que así lo determine el tribunal. El procedimiento a seguir será de acuerdo con lo establecido por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como 'Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico'." (Énfasis suplido.)

haya agotado los remedios provistos por la agencia, y (ii) que la resolución sea final y no interlocutoria. Pasemos a analizar cada uno de estos requisitos por separado.

C. La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial de carácter fundamentalmente práctico. Mediante ella, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agota todos los remedios administrativos disponibles, de forma tal que la decisión administrativa refleje la posición final de la entidad estatal. *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42 (1993); *Rivera v. E.L.A.*, 121 D.P.R. 582, 593 (1988). El propósito de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales, evitando así una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo. *Guadalupe v. Saldaña, Pres. U.P.R.*, ante; *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347, 354–355 (1988).

En torno a los fundamentos aludidos en apoyo a la referida doctrina, en *Rivera v. E.L.A.*, ante, pág. 595, reiterado en *Guadalupe v. Saldaña, Pres. U.P.R.*, ante, pág. 49, señalamos que con ésta se logra:

(1) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; (2) que la agencia pueda utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos.

En términos generales, la determinación de la aplicación de la referida doctrina depende del balance entre los factores que operan a favor y en contra de la revisión judicial. Algunos de los factores que inclinan la ba-

lanza a favor de la preterición del requisito de agotamiento son: (i) que el dar curso a la acción administrativa haya de causar un daño inminente, material, sustancial y no teórico o especulativo, (ii) que el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado —*Vda. de Iturregui v. E.L.A.*, 99 D.P.R. 488, 491 (1970)—, (iii) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (iv) el asunto es estrictamente de derecho.[9] A esos efectos, la Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico señala que

> [e]l tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; o cuando el requerir en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos; o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 L.P.R.A. sec. 2173.

Sobre este asunto, en *Guadalupe v. Saldaña, Pres. U.P.R.*, ante, señalamos que corresponde a la parte que pretende acudir al foro judicial probar, mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos. Véase, además, *Rivera v. E.L.A.*, ante, pág. 596.

En lo referente a las excepciones a la doctrina sobre agotamiento de remedios, en *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 283 (1991), reiteramos que la impugnación constitucional de actuaciones administrativas está sujeta a dicha norma y a lo resuelto en *First Fed. Savs. v. Asoc. de*

---

[9] Véanse: *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 D.P.R. 42 (1993); *Rivera v. E.L.A.*, 121 D.P.R. 582, 596 (1988); *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722 (1982); Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2173.

*Condómines*, 114 D.P.R. 426, 438 (1983), a los efectos de que

> [e]l mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo. Aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo.

Expresamos, por último, en *Mercado Vega v. U.P.R.*, ante, pág. 286, que

> ... es doctrina firmemente establecida, que para que proceda un reclamo por la violación de un derecho garantizado constitucionalmente, a los fines de eludir el cauce administrativo, *es necesario que se demuestre la existencia de un agravio de patente intensidad que justifique desviarse del mencionado cauce.* (Énfasis suplido.)

Por otro lado, y en cuanto a la excepción referente a cuestiones de derecho, este Tribunal ha resuelto que se refiere a situaciones de interpretación estatutaria en la que los tribunales son los expertos, es decir, cuando se trata de situaciones estrictamente de derecho. Sobre este particular, en *Adorno Quiles v. Hernández*, 126 D.P.R. 191 (1990), este Tribunal se enfrentó a una controversia que giraba en torno a la validez de un contrato suscrito entre una manejadora de boxeadores y un boxeador. En el citado caso, el boxeador acudió ante la Comisión de Boxeo Profesional de Puerto Rico (Comisión) para que ésta invalidara el referido contrato. Durante la vista administrativa ante la Comisión, el abogado de la manejadora impugnó la jurisdicción de la Comisión y, al día siguiente, acudió al Tribunal de Primera Instancia para que declarara válido el contrato. El boxeador, por su parte, solicitó que se desestimara la acción incoada ya que, según adujo, no se agotaron los remedios administrativos. Este Tribunal determinó que, siendo la controversia de índole contractual y estrictamente de derecho, se podía obviar el cauce administrativo y acudir directamente a los tribunales.

De igual forma, en *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 D.P.R. 906 (2001), reiteramos que cuando se trata de cuestiones estrictamente de derecho, no hay que agotar los remedios administrativos. En el referido caso, la Asociación de Pescadores de Punta Figueras, Inc. presentó ante el Tribunal de Primera Instancia una acción de interdicto y daños y perjuicios. Dicha acción buscaba que se le ordenara a Puerto del Rey el cumplir con ciertos requisitos impuestos por Administración de Reglamentos y Permisos (A.R.Pe.) cuando ésta le concedió a la mencionada entidad los permisos para construir una marina en Fajardo. En dicho caso determinamos que el hecho de que A.R.Pe. ya había otorgado los permisos y de que la acción judicial buscaba el exigir que se cumplieran con las condiciones impuestas al otorgarse dichos permisos, convertían la controversia en una estrictamente de derecho que no requería la pericia de la agencia y, por lo tanto, no era de aplicación la doctrina de agotamiento de remedios.

D. Debe recalcarse, con relación a la exigencia de que el Tribunal de Apelaciones sólo podrá revisar aquellas órdenes o resoluciones finales de una agencia, que este Tribunal ha resuelto que, aun cuando dicho requisito es diferente a la doctrina de agotamiento de remedios, *ambas doctrinas tienen un alcance análogo y que, de ordinario, ambas gozan de las mismas excepciones.* Véase *J. Exam. Tec. Méd. v. Elías et al.*, 144 D.P.R. 483 (1997).[10] En dicho caso examinamos las diferentes instancias en que es factible preterir el cauce administrativo en situaciones tales como: cuando la agencia carece de jurisdicción y la posposición conllevaría un daño irreparable o cuando el

---

[10] De igual forma, en el ámbito federal, de donde proviene nuestra legislación, se ha reconocido que la doctrina sobre agotamiento de remedios y la exigencia de que sólo las resoluciones finales son revisables se basan en los mismos fundamentos. Véanse: *McKart v. United States*, 395 U.S. 185, 194 (1969); *Rosenthal & Co. v. Commodity Futures Trading Com'n*, 614 F.2d 1121, 1124 (6to Cir. 1980). Véase, además, B. Scwartz, *Administrative Law: a Casebook*, 4ta ed., Rockville, Ed. Aspen Law and Business, pág. 761.

asunto es estrictamente de derecho. De hecho, en el referido caso permitimos la revisión de una orden interlocutoria en vista de la clara falta de jurisdicción de la agencia.

██ Luego de la decisión emitida en *J. Exam. Tec. Méd. v. Elías et al.*, ante, la Asamblea Legislativa aprobó la Ley Núm. 186, ante. Mediante esta ley se añadió un párrafo adicional a la Sec. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, para que dicha sección especificara que

> [u]na orden o resolución interlocutoria de una agencia no es revisable directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. 3 L.P.R.A. sec. 2172.

Ello no obstante, se puede argumentar que dicha actuación legislativa *no* tuvo la intención, o el propósito, de variar la norma jurisprudencial antes mencionada. Ello en vista del hecho de que en la Exposición de Motivos de la citada disposición estatutaria *no* se hace mención del caso de *J. Exam. Tec. Méd. v. Elías et al.*, ante, y *además*, que no se expresa que "[e]sta medida no cambia, altera o modifica el estado de derecho vigente".[11] Ello da la fuerte impresión de que la doctrina establecida en *J. Exam. Tec. Méd. v. Elías et al.*, ante —*en torno a las excepciones al requisito de finalidad de las resoluciones de las agencias para que éstas sean revisables*— continúa vigente.

Como es sabido, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico proviene de la jurisdicción norteamericana.[12] Aun cuando en el ámbito federal las cortes no han establecido definitiva-

---

[11] 2001 (Parte 1) Leyes de Puerto Rico 59.

[12] Sobre este particular, la Ley Núm. 170 de 12 de agosto de 1988 (L.P.A.U.), 3 L.P.R.A. sec. 2101 *et seq.*, fue adoptada siguiendo el modelo del *Administrative Procedure Act* (A.P.A.), 5 U.S.C.A. sec. 551 *et seq.*, y del *Model State Administrative Procedure Act.* Véanse: *Asociación Maestros v. Comisión*, 159 D.P.R. 81 (2003); *Piñero v. A.A.A.*, 146 D.P.R. 890 (1998).

mente si la exigencia de finalidad de las resoluciones administrativas —para que éstas sean revisables— es un segmento de la doctrina de agotamiento de remedios, parte del tema sobre madurez, o un tercer tema separado, *lo que sí se ha establecido con certeza es que dicha exigencia tiene excepciones.* Con relación a estas excepciones, el tratadista Kenneth Kulp Davis, en su tratado de derecho *Administrative Law Treatise*[13] *señala que las cortes norteamericanas han evaluado el tema sobre la revisión de resoluciones interlocutorias caso a caso.*

A manera de ejemplo, en *Rosenthal & Co. v. Commodity Futures Trading Com'n,* 614 F.2d 1121, 1127–1128 (6to Cir. 1980), la Corte de Apelaciones Federal para el Séptimo Circuito resolvió que la peticionaria, Rosenthal & Company, había fallado al demostrar cómo la posposición de la revisión judicial —hasta tanto la Comisión emitiera una resolución final— le causaría a ésta el menoscabo de derechos importantes. A esos efectos, el referido tribunal indicó lo siguiente:

> Rosenthal, however, has not suggested how postponing judicial review until the entry of a final administrative order against it would cause it to lose any important rights. Virtually all of its claims, if sustained, would be valid grounds for upsetting any reparation order that may be entered against it. Thus, apparently the only injury which Rosenthal would suffer by the failure to obtain judicial review now would be the cost and inconvenience of defending against the claim at an administrative hearing. It is clear, however, that the litigation expense and attendant inconvenience do not constitute irreparable injury sufficient to justify judicial intervention into pending agency proceedings. In essence, Rosenthal seeks to have this court review an interlocutory order much like the denial of a motion to dismiss. Such agency actions are ordinarily not appealable and whatever expense and inconvenience Rosenthal may suffer are outweighed by the danger of disrupting ongoing administrative proceedings by piecemeal review.

---

[13] 4 *Davis Administrative Law Treatise 2d* Sec. 26:10 (1983).

De igual forma, en *Gulf Oil Corp. v. United States Dept. of Energy*, 663 F.2d 296 (D.C. Cir. 1981), unos productores de aceite crudo demandaron en sentencia declaratoria e interdicto ante el Tribunal de Distrito Federal para el Distrito de Columbia, ello mientras se realizaba un procedimiento administrativo ante el Departamento de Energía de Estados Unidos por razón de alegadas violaciones de ley por parte de los mencionados productores. En la referida demanda se arguyó que los funcionarios a cargo del procedimiento administrativo ante el Departamento de Energía habían incurrido en destrucción de documentos y en una serie de comunicaciones impropias. El Departamento, por su parte, argumentó que la aludida corte de distrito carecía de jurisdicción para entender en el recurso, esto debido a que los demandantes no habían agotado los remedios administrativos ni su caso se encontraba maduro para verse ante los tribunales, por no haber emitido la agencia involucrada una resolución final.

En dicho caso, la Corte de Apelaciones Federal para el Circuito del Distrito de Columbia determinó que la revisión de órdenes interlocutorias, así como la intervención de las cortes antes que finalice un procedimiento administrativo, deben ser la excepción y no la regla. A esos efectos, la referida corte indicó que el permitir la revisión de resoluciones interlocutorias sólo procedía en instancias en que derechos sustanciales y sustantivos de la parte que pretende revisar se vean afectados de tal forma que ameriten una temprana intervención judicial.

El caso *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980), presenta unos hechos similares al caso hoy ante nuestra consideración. En este caso la Comisión Federal de Comercio expidió una queja contra la compañía de petróleo recurrida, Standard Oil Company of California, alegando varias violaciones de ley. Mientras se dirimía y se adjudicaba la queja, dicha compañía intentó revisar ante el Tri-

bunal de Distrito Federal la legalidad de la querella expedida por la Comisión, por alegadamente expedirla en violación de la ley. La Corte de Distrito desestimó la revisión. Sin embargo, la Corte de Apelaciones Federal para el Noveno Circuito revocó, indicando que la actuación de la agencia constituía una resolución final apelable. El caso llegó al Tribunal Supremo federal. Si bien el caso ante el Tribunal Supremo de Estados Unidos giró en torno a si las actuaciones de la agencia constituían una resolución final que permitiera su revisión, en dicho caso se estableció lo inadecuado de las revisiones en este tipo de actuación por parte de la agencia. A esos fines, el Tribunal Supremo de Estados Unidos expresó:

> Serving only to initiate the proceedings, the issuance of the complaint averring reason to believe has no legal force comparable to that of the regulation at issue in Abbott Laboratories, nor any comparable effect upon Socal's daily business. The regulations in Abbott Laboratories forced manufacturers to "risk serious criminal and civil penalties" for noncompliance, 387 U.S., at 153, 87 S.Ct., at 1517, or "change all their labels, advertisements, and promotional materials; ... destroy stocks of printed matter; and ... invest heavily in new printing type and new supplies." *Id.*, at 152, 87 S.Ct., at 1517. Socal does not contend that the issuance of the complaint had any such legal or practical effect, except to impose upon Socal the burden of responding to the charges made against it. Although this burden certainly is substantial, it is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action. In contrast to the complaint's lack of legal or practical effect upon Socal, the effect of the judicial review sought by Socal is likely to be interference with the proper functioning of the agency and a burden for the courts. Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. *Weinberger v. Salfi*, 422 U.S. 749, 765 95 S.Ct. 2457, 2466, 45 L. Ed. 2d 522 (1975). Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. *McGee v. United States*, 402 U.S. 479, 484, 91 S. Ct. 1565, 1568, 29 L. Ed. 2d 47 (1971); *McKart v. United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 1663, 23 L. Ed. 2d 194 (1969). Furthermore, unlike the review

in Abbott Laboratories, judicial review to determine whether the Commission decided that it had the requisite reason to believe would delay resolution of the ultimate question whether the Act was violated. Finally, every respondent to a Commission complaint could make the claim that Socal had made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes. *FTC v. Standard Oil Co. of Cal.*, ante, págs. 242–243.

En el citado caso el Tribunal Supremo de Estados Unidos también reconoció que de existir un daño irreparable, entonces la intervención temprana de los tribunales estaría justificada. Ello no obstante, dicha Corte determinó que en el mencionado caso no se había probado daño alguno. *FTC v. Standard Oil Co. of Cal.*, ante, pág. 244.

E. Este Tribunal ha reiterado que la interpretación de un estatuto, por el organismo facultado por ley para administrarlo y darle cumplimiento, merece gran respeto y deferencia judicial. Véanse: *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Tormos & D.A.C.O. v. F.R. Technology*, 116 D.P.R. 153, 160 (1985); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183, 188–189 (1984). Así pues, en *M & V Orthodontics v. Negdo. Seg. Empleo*, ante, págs. 188–189, establecimos que:

No hay duda de que en este momento podríamos entrar a resolver el punto legal aquí en controversia. Preferimos, sin embargo, no hacerlo. Como es sabido, "la interpretación administrativa de un estatuto por aquellos organismos encargados de ponerlos en vigor y velar porque sus fines se cumplan nos merecen un gran peso". Ello es así por cuanto dichos organismos cuentan con una vasta experiencia y conocimiento (*expertise*) en relación con la materia con la que bregan día tras día. La interpretación que del estatuto éstos hagan y los fundamentos que aducen en apoyo de la misma, resultan de gran ayuda para los tribunales de justicia al éstos encontrarse en la posición de tener que pasar juicio sobre la corrección o no de las decisiones emitidas por dichos organismos. (Citas omitidas.)

## II

La Oficina de la Procuradora argumenta ante nos que el foro apelativo intermedio erró al no desestimar el recurso incoado por MCS. Ello debido a que dicho recurso buscaba revisar una resolución interlocutoria sin que se cumpliera con las excepciones reconocidas por nuestra jurisprudencia.

Por su parte, la recurrida MCS argumenta en su comparecencia que la resolución interlocutoria aquí en cuestión fue emitida sin jurisdicción y en violación a su debido proceso de ley, ameritando así que se prescinda del requisito de que, para fines de revisión administrativa, deba existir una resolución final emitida por la agencia. Para fundamentar su posición, MCS señala que la ausencia de un reglamento hace que la Oficina de la Procuradora carezca de jurisdicción para realizar investigaciones y emitir órdenes como la del caso de epígrafe. Arguye, además, que la falta de promulgación de un reglamento por parte de dicha Oficina en el caso de epígrafe constituye una violación al debido proceso de ley, tanto sustantivo como procesal. Asimismo, señala que la cuestión referente a la violación al debido proceso de ley es un planteamiento de índole constitucional y que no requiere del *"expertise"* de la agencia aquí en cuestión. *No nos convencen sus argumentos.* Veamos por qué.

De entrada, precisa determinar si el caso ante nos presenta la excepción reconocida por este Tribunal a la regla de que sólo serán revisables ante el tribunal apelativo intermedio las resoluciones finales de las agencias; a saber, la *clara falta de jurisdicción de la agencia.* Veamos.

 Como es por todos conocido, el reglamento promulgado por una agencia debe circunscribirse a la ley bajo la cual éste fue promulgado. *Franco v. Depto. de Educación*, 148 D.P.R. 703, 712 (1999); *Carrero v. Depto. de Educación*, 141 D.P.R. 830, 837 (1996). Dicho de otra

forma, el reglamento complementa la ley, pero no puede estar en conflicto con ésta. *Franco v. Depto. de Educación*, ante. En el caso de autos, la Oficina de la Procuradora fue creada por ley y sus facultades, entre ellas la de investigación, fueron atribuidas a ésta mediante legislación. Si bien dicha legislación provee para que se promulgue un reglamento, ello no es un requisito jurisdiccional para que ésta ejerza las funciones delegadas por la Legislatura. Sobre este particular, en *Asoc. Fcias. Com. v. Depto. de Salud*, 156 D.P.R. 105 (2002), este Tribunal reiteró la importancia de la promulgación de reglamentos, sobre todo cuando la ley habilitadora es ambigua; *sin embargo, en ningún momento hemos adjudicado carácter jurisdiccional a dicha promulgación.*

Lo anteriormente expuesto es suficiente para concluir que en el presente caso no está presente la excepción relativa a la "clara falta de jurisdicción" reconocida por nuestra jurisprudencia a los fines de permitir que un litigante pueda preterir el cause administrativo. Como señaláramos en *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433, 444 (1992), "no toda alegación de ausencia de jurisdicción va a tener el efecto de liberar a la parte de culminar sus gestiones en la agencia"; además, aquí fuimos enfáticos al expresar que

> [c]ualquier otra interpretación tendría el efecto de eliminar de facto la doctrina de agotamiento de remedios. Ante una alegación de ausencia de jurisdicción, es a la propia agencia, salvo unas excepciones, a la que le corresponde hacer una determinación inicial de su propia jurisdicción.

En lo que respecta a la excepción relativa a la "violación constitucional", este Tribunal ha resuelto que aquella parte que pretenda utilizar dicha excepción a los fines de prescindir del cauce administrativo debe probar, *con hechos específicos y bien definidos*, la necesidad de obviar dicho cauce. Véanse: *Guadalupe v. Saldaña, Pres. U.P.R.*, ante; *Rivera v. E.L.A.*, ante. Asimismo, en reitera-

das ocasiones hemos resuelto que, para preterir el agotar remedios administrativos alegando una violación constitucional, *dicha violación debe ser de tal magnitud y debe constituir un agravio tan intenso que justifique el desviarse del cauce administrativo.* Véase *Mercado Vega v. U.P.R.*, ante.

En el caso de autos la parte que pretende revisar la resolución interlocutoria aquí en cuestión, MCS, no ha demostrado ante nos cuál es la necesidad de no esperar a que la agencia concernida termine sus procesos y emita una resolución u orden final. Sus argumentos referentes a la alegada violación al debido proceso de ley no presentan una injuria a derechos sustantivos o constitucionales de tal magnitud que ameriten el prescindir del requerimiento de una resolución final de parte de la agencia para fines de revisar judicialmente sus actuaciones.

En cuanto al argumento relativo a que la consideración de las controversias planteadas en el caso de autos no requieren del *expertise* de la agencia, debemos primero establecer cuál fue la controversia presentada ante ésta. La controversia se circunscribió a lo siguiente: ¿Es indispensable que la Oficina de la Procuradora promulgue un reglamento para realizar investigaciones y emitir órdenes como la implicada en este caso o su ley habilitadora provee suficientes guías a esos efectos? ¿La falta de promulgación de este reglamento priva a la Oficina de la Procuradora de jurisdicción para proceder de acuerdo con su ley habilitadora o dicha jurisdicción emana directamente de esta última? ¿Viola dicha omisión el debido proceso de ley sustantivo de MCS o su derecho queda protegido en la medida en que la ley habilitadora contiene todos los requerimientos exigidos a ésta?

Como vemos, la propia naturaleza de las interrogantes planteadas en primera instancia ante la Oficina de la Procuradora exigieron que dicha agencia realizara *un análisis detallado y profundo* de los requerimientos de la ley habi-

litadora de dicha oficina y de las obligaciones que esta ley le impuso. Ello implica, necesariamente, que en el presente caso *dicha agencia tuvo que enfrascarse en una interpretación de su propia ley habilitadora.*

Como precisáramos en el acápite anterior, la interpretación que realiza una agencia de su estatuto habilitador merece *gran deferencia* por parte de los tribunales. En vista de ello, y aunque reconocemos que en el presente caso la interpretación que realizó la Oficina de la Procuradora no necesariamente requirió de su *expertise,* no cabe duda que su determinación merece gran deferencia en la medida en que ésta fue el producto de una interpretación de su propia ley habilitadora.

En vista de todo lo anteriormente expuesto, forzosa resulta ser la conclusión de que el Tribunal de Apelaciones erró al no desestimar la revisión incoada por MCS. Dicho recurso era improcedente en derecho ya que pretendía la revisión de una orden interlocutoria sin demostrar la existencia de elementos extraordinarios que ameritaran el prescindir de la exigencia de finalidad de las órdenes o resoluciones emitidas por una agencia administrativa para que su actuación pueda ser revisada por el Tribunal de Apelaciones.

Finalmente, debemos recordar que MCS no queda desprovista de remedio. Una vez finalicen los procedimientos ante la Oficina de la Procuradora, ésta podrá presentar sus planteamientos ante el foro judicial como parte de la revisión de la resolución final que en su día emita la referida Oficina.

### III

Por todo lo anteriormente expuesto, *procede expedir el auto de "certiorari", dictar sentencia revocatoria de la resolución emitida en el presente caso por el Tribunal de Apelaciones —que se negó a desestimar el recurso presentado*

*por MCS— y devolver el caso a la Oficina de la Procuradora para procedimientos ulteriores compatibles con lo aquí resuelto.*

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señor Fuster Berlingeri y Señor Rivera Pérez, y la Juez Asociada Señora Rodríguez Rodríguez no intervinieron.