ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ, LUIS MISLA VÉLEZ, EMANUEL CUEVAS PLANAS<br><br>Apelante<br><br>V.<br><br>NÉSTOR BORNEU JIMÉNEZ en su capacidad personal, su esposa FULANA DE TAL como co-demandada, SOCIEDAD BIENES GANACIALES compuesta por ambos, SUCESIONES; COMPAÑÍAS ASEGURADORAS compuesta en beneficio de ambos<br><br>Apelados | KLAN202500075 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Civil Núm.: BY2021CV03167<br><br>Salón: 503<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Salgado Schwarz, Carlos G., Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico a 12 de marzo de 2025.

Comparece ante nos el señor Eliezer Santana Báez ("Sr. Santana" o "Apelante") quien nos solicita que revoquemos la Sentencia Enmendada emitida el 9 de enero de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Bayamón ("foro de instancia" o "foro recurrido"). Mediante dicha Sentencia, el foro recurrido desestimó la Demanda de epígrafe al amparo de la regla 10.2 de Procedimiento Civil.[2]

Por los fundamentos que exponemos a continuación, **confirmamos** la Sentencia Enmendada apelada.

---

[1] Notificada el 13 de enero de 2025.
[2] 32 LPRA Ap. V, R. 36.1.

Número Identificador:
SEN2025_____

-I-

El 1ro de enero de 2020, el Apelante presentó una *Solicitud de Remedio Administrativo*[3]. En esa ocasión, el Sr. Santana expresó su versión de los hechos. En síntesis, alegó que, luego de una discusión entre el señor Néstor Borneu Jiménez ("Sr. Borneu" o "Apelado") y el confinado Richard González ("Sr. González"), el Apelado le roció gas pimienta al Sr. González y, por encontrarse cerca, el Apelante resultó afectado. Así las cosas, el 27 de enero de 2020[4], la División de Remedios Administrativos emitió una *Respuesta al Miembro de la Población Correccional*[5].

Así las cosas, el 11 de agosto de 2021 el Sr. Santana presentó una Demanda en Daños y Perjuicios contra el señor Sr. Borneu. El 25 de marzo de 2022 el Apelado presentó una *Moción de Desestimación*[6] alegando, entre otros asuntos, que el Apelante no había agotado los remedios administrativos en el Departamento de Corrección y Rehabilitación ("DCR"). El 21 de diciembre de 2022, el foro de instancia emitió una *Sentencia*[7] en la que desestimó la Demanda al amparo de la Regla 10.2 de Procedimiento Civil, supra. Según surge del expediente electrónico, la Sentencia no fue notificada a todas las partes[8], por lo que el foro de instancia la notificó nuevamente el 13 de enero de 2025. Inconforme con la determinación, el Sr. Santana acudió ante nos el

---

[3] Véase Entrada #1 del Sistema Unificado de Manejo y Administración de Caso (SUMAC).
[4] Recibido por el Apelante el 29 de enero de 2020.
[5] Véase Entrada #1 del Sistema Unificado de Manejo y Administración de Caso (SUMAC).
[6] Véase Entrada #21 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[7] Véase Entrada #22 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[8] Véase Entrada #23 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

31 de enero de 2025 mediante recurso de apelación e hizo el siguiente señalamiento de error:

> ERRÓ EL TPI BAYAMÓN Y ABUSÓ DE SU DISCRECIÓN AL DETERMINAR QUE PARA DEMANDAR HAY QUE AGOTAR LOS REMEDIOS ADMINISTRATIVOS ANTE LA AGENCIA, CUANDO LA AGENCIA NO TIENE PERSONALIDAD JURÍDICA PARA DIRIMIR UNA CONTROVERSIA DE DAÑOS POR LO QUE LA JURISDICCIÓN PARA UNA ACCIÓN EN DAÑOS, LA POSEE EL TPI DE BAYAMÓN Y NO LA AGENCIA.

-II-

**A. Doctrina de agotamiento de remedios**

La sección 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAUG")[9] dispone lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia **y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. […][10]

La doctrina de remedios administrativos es una norma de autolimitación judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado.[11] Su propósito principal es evitar una

---

[9] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[10] 3 LPRA § 9672. *Énfasis suplido.*
[11] *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1057 (2013); *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004); *Asoc. Pesc. Pta. Figueras v. Pto. del Rey*, 155 DPR 906 (2001).

intervención judicial innecesaria y a destiempo que tienda a interferir con el cauce y desenlace normal del procedimiento administrativo.[12] De esta forma, la agencia administrativa puede (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad; y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos.[13]

Esta doctrina aplica a aquellos casos en los cuales una parte instó una acción ante una agencia administrativa y luego acude al tribunal sin antes haber completado el trámite administrativo.[14] Es decir, "*[e]l agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó, o que debió haber comenzado, pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el referido procedimiento administrativo.*"[15]

La doctrina de agotamiento de remedios administrativos no debe ser soslayada, a menos que se configure alguna de las limitadas excepciones que bajo nuestro ordenamiento jurídico justifican preterir el trámite administrativo.[16]

---

[12] *Procuradora Paciente v. MCS*, supra, a la pág. 35; *Mun. de Caguas v. AT&T*, 154 DPR 401 (2001); *Igartúa de la Rosa, et als. v. A.D.T.*, 147 DPR 318 (1998).
[13] *AAA v. UIA*, 200 DPR 903 (2018); *Procuradora Paciente v. MCS*, supra.
[14] *AAA v. UIA*, supra; *Colón Rivera v. ELA*, supra; *Mun. de Caguas v. AT&T*, supra.
[15] J. Echevarría Vargas, Derecho Administrativo, 5ta ed. Rev., San Juan, Ed. SITUM, 2023, pág. 75.
[16] *ORIL v. El Farmer, Inc.*, 204 DPR 229 (2020); *Igartúa de la Rosa v. A.D.T.*, supra.

Así, la Sección 4.3 de la LPAUG dispone lo siguiente:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa.[17]

El Tribunal Supremo ha resuelto que le corresponde a la parte que acude ante nos probar con hechos específicos y bien definidos la necesidad de obviar el cauce administrativo.[18] Ahora bien, debemos tener presente que cuando "*el agravio sea uno de 'patente intensidad al derecho del individuo que reclame urgente reparación', se puede utilizar el injunction para eludir el cauce administrativo.*"[19]

### B. Jurisdicción del Departamento de Corrección

La *Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009*[20] aprobó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011[21] ("Plan de Reorganización"), con el fin de reorganizar el Departamento de Corrección y Rehabilitación ("DCR"). Mediante dicho plan, se estableció como política pública del Estado Libre Asociado de Puerto Rico:

> [L]a creación de un sistema integrado de seguridad y administración correccional donde

---

[17] 3 LPRA § 9673.
[18] *Procuradora Paciente v. MCS*, supra.
[19] *S.L.G. Flores-Jiménez v. Colberg*, 173 DPR 843, 852 (2008).
[20] 3 LPRA ant. sec. 8821 *et seq.*
[21] Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado. 3 LPRA, Ap. XVIII.

las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.[22]

En lo referente a la creación del DCR, el Artículo 4 del Plan de Reorganización Núm. 2, supra, dispone que: "*[s]e crea el Departamento de Corrección y Rehabilitación como el organismo en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país.*"[23]

Ahora bien, respecto al asunto ante nos, el Artículo 7(aa) del Plan de Reorganización dispone que el Secretario del DCR tendrá entre sus funciones, facultades y deberes:

[…] adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios.[24]

En virtud de este Artículo, el DCR creó y aprobó el Reglamento para Atender las Solicitudes de Remedios Administrativos radicadas por los Miembros de la Población Correccional[25]. Este Reglamento establece un marco normativo para la presentación, evaluación y resolución ante la División de Remedios Administrativos

---

[22] *Véase* Artículo 2 del Plan de Reorganización Núm. 2, supra.
[23] 3 LPRA, Ap. XVIII, Art. 4.
[24] 3 LPRA, Ap. XVIII, Art. 7 (aa).
[25] Reglamento Núm. 8583, Departamento de Estado, 4 de mayo de 2015.

del DCR de las solicitudes de remedios administrativos por parte de los miembros de la población correccional. La "solicitud de remedios" es el "*[r]ecurso que presenta un miembro de la población correccional por escrito, de una situación que afecte su calidad de vida y seguridad, relacionado con su confinamiento.*"[26]

El Reglamento en cuestión dispone que el DCR fue creado "*para atender cualquier queja o agravio que pudieran tener lo confinados en contra del Departamento de Corrección y Rehabilitación o sus funcionarios sobre cualquier asunto…*"[27]. Por su parte, en cuanto a la jurisdicción de la División de Remedios Administrativos, la Regla VI del Reglamento Núm. 8583, *supra*, dispone lo siguiente:

1. La División tendrá jurisdicción para atender toda Solicitud de Remedio radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, relacionada directa o indirectamente con:

   a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en su plan institucional.[28]

   […]

**C. Jurisdicción del tribunal**

Es norma reiterada en nuestro ordenamiento jurídico procesal que los "*tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen.*"[29] La

---

[26] Regla IV del Reglamento Núm. 8583, supra.
[27] *Véase* Introducción del Reglamento Núm. 8583, *supra*.
[28] *Véase* Reglamento Núm. 8583, supra, Regla VI.
[29] *SLG Szendrey-Ramos* v. *F. Castillo*, 169 DPR 873, 882 (2007); *Peerless Oil* v. *Hnos. Torres Pérez*, 186 DPR 239, 250 (2012).

jurisdicción es el poder o autoridad de los tribunales para considerar y decidir casos y controversias.[30] Ante la falta de jurisdicción, el tribunal debe así declararlo y proceder a desestimar el recurso -toda vez que cualquier sentencia dictada sin jurisdicción es nula en derecho- pues la ausencia de jurisdicción es insubsanable.[31]

En lo referente al asunto ante nuestra consideración, el Tribunal Supremo ha señalado que "*en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción donde no la hay*".[32] Es decir, "*las agencias administrativas solamente pueden ejercer los poderes que su ley habilitadora expresamente les ha otorgado y lo [sic] que sean indispensables para llevar a cabo su encomienda primordial.*"[33]

A fin de determinar si una agencia administrativa tiene jurisdicción sobre una controversia en particular, es necesario analizar las facultades que se le confirieron en su ley habilitadora, así como aquellos que resultan indispensables para el cumplimiento de sus funciones y deberes. Ahora bien, ante un escenario en el que la agencia no está facultada en ley para conceder determinado remedio, la parte perjudicada puede acudir directamente al foro judicial.[34]

Recientemente, y en lo pertinente a la controversia ante nos, el Tribunal señaló lo siguiente:

---

[30] *Allied Mgmt. Grp.,* Inc. v. Oriental Bank, 204 DPR 374, 385 (2020); *Solá Moreno v. Bengoa Becerra*, 182 DPR 675, 682 (2011).
[31] *Shell* v. *Srio. Hacienda*, 187 DPR 109, 123 (2012).
[32] *Muñoz Barrientos v. ELA et al.* 2023 TSPR 105, 212 DPR ___ (2023) citando a *Raimundi v. Productora* 162 DPR 215, 224 (2004).
[33] *Íd.*, citando a *Col. Médicos et als. v. Com. Seguros et al.*, 201 DPR 362 (2018).
[34] *Igartúa de la Rosa v. A.D.T.*, supra, a las págs. 332-333, citando a *Cintrón v. E.L.A.*, 127 DPR 582 (1990).

> [S]i el reclamo que tiene una parte en determinado litigio es uno de daños y perjuicios, y la ley orgánica de la agencia no provee para el resarcimiento de estos, resultaría innecesario "agotar ciertos remedios que en realidad no coinciden con los que [la parte] realmente pretende obtener ante el foro judicial". […] Al respecto, debemos recordar que:
>
> [l]a presentación en daños en los tribunales no puede ser utilizado como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle la finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial, subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo. […]
>
> En tales situaciones, "los tribunales deben abstenerse de adjudicar aquellas controversias incluidas en la reclamación judicial cuya adjudicación está reservada al foro administrativo, ya sea por tratarse de una materia de jurisdicción exclusiva de ese foro, o porque su resolución requiere una previa interpretación de la pericia administrativa, entre otras circunstancias. […][35]

-III-

En su recurso, el apelante alega que el foro de instancia abusó de su discreción al determinar que debía agotar los remedios administrativos ante la agencia. No le asiste la razón. Veamos.

Tal y como indicamos en el acápite II de este escrito, la doctrina de agotamiento de remedios determina cuándo es el momento apropiado para que los tribunales intervengan en una controversia que ha sido sometida a la atención de una agencia.

Según se desprende del *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), el 1ro de enero de

---

[35] *Muñoz Barrientos v. ELA*, 2023 TSPR 105, 212 DPR ___ (2023). Citas internas omitidas.

2020, el Apelante presentó una Solicitud de Remedio Administrativo, la cual fue contestada el 27 de enero del mismo año. De la propia solicitud surge que, de no estar conforme con la respuesta emitida, el miembro de la población correccional podrá solicitar revisión dentro del término de veinte (20) días contados a partir del recibo de la notificación de la respuesta. Eso no ocurrió en este caso. En el expediente del caso de epígrafe no existe documento alguno donde el Apelante haga constar que agotó los remedios administrativos. Contrario a ello, el 11 de agosto de 2021, el Sr. Santana presentó la Demanda ante el foro de instancia, sin este tener jurisdicción para atender el asunto.

Además, cabe señalar que el Apelante no ha puesto a este Tribunal en posición de determinar que existen razones por las cuales se deba obviar el cauce administrativo. Por lo tanto, resulta forzoso confirmar la determinación del foro recurrido desestimando la Demanda de epígrafe, por carecer de jurisdicción para atender el reclamo.

-IV-

Por los fundamentos antes enunciados, **confirmamos** la Sentencia Enmendada apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones