ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-165[1]

| PITIRRE MANUFACTURING, INC.<br><br>Demandante-Apelante<br><br>v.<br><br>FRANCISCO PARÉS ALICEA, SECRETARIO DEL DEPARTAMENTO DE HACIENDA DE PUERTO RICO<br><br>Demandado-Apelado | KLAN202300593 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2020CV07043<br><br>Sala: 906<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente), Código de Rentas Internas – Impuesto Sobre Ventas y Uso |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Pérez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de septiembre de 2024.

Comparece ante nos, Pitirre Manufacturing, Inc., (en adelante, Pitirre o parte apelante), quien presenta este recurso de Apelación en el que solicita que se revise una *Sentencia* emitida por el Tribunal de Primera Instancia Sala Superior de San Juan, (en adelante, TPI), el 9 de junio de 2023 y notificada el mismo día. Mediante dicha *Sentencia,* el TPI declaró *Ha Lugar* la *Moción de Desestimación* presentada por la parte apelada y desestimó la demanda en su totalidad al disponer de la única causa de acción pendiente.

Luego de concederle término para ello, el 11 de agosto de 2023, Francisco Parés Alicea, Secretario de Hacienda, Estado Libre Asociado de Puerto Rico, en adelante, (Secretario de Hacienda o

---

[1] Mediante la Orden Administrativa OAT-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Eileen J. Barresi Ramos.

parte apelada) por conducto de la Oficina del Procurador General de Puerto Rico, compareció mediante *Escrito en Cumplimiento de Resolución.* Así, con el beneficio de la comparecencia de las partes, a la luz del derecho aplicable, y por los fundamentos que exponemos a continuación, *se revoca* la *Sentencia apelada.*

A continuación, resumimos los hechos pertinentes de un largo trámite procesal para la disposición del recurso, los cuales surgen del expediente ante nuestra consideración.

*-I-*

El 22 de diciembre de 2020, Pitirre presentó una petición de interdicto permanente contra el Departamento de Hacienda (Hacienda).[2] La parte apelante arguyó que, se dedicaba a dos (2) actividades comerciales distintas, a saber, la manufactura de uniformes y la reventa de artículos terminados. A estos fines, alegó que tenía dos (2) números de registro de comerciante distintos. Adujo que, para allá para septiembre de 2013, Pitirre radicó una solicitud de Certificado de Revendedor y de Exención de Impuesto sobre Ventas y Uso Municipal, (en adelante, IVU). Alegó que, este certificado era necesario para poder reclamar crédito en la planilla mensual de impuesto sobre la venta (en adelante, planilla), por el impuesto que Pitirre tenía que pagar cuando importaba artículos terminados para la reventa.[3] Dicha solicitud fue denegada el 1 de octubre de 2013 mediante una *Notificación de Denegación del Certificado de Revendedor y de Exención del Impuesto sobre Ventas y Uso Municipal,* en la misma se le notificó que "no cualifica como vendedor".[4] Al no obtener fundamento para denegarla, el 9 de octubre de 2013, la parte apelante radicó una *Querella* en la

---

[2] Apéndice del Recurso de Apelación, págs. 1-61.
[3] *Íd.*, págs. 1-37.
[4] *Íd.*, pág. 38.

Secretaría de Procedimiento Adjudicativo cuestionando la determinación del querellado.[5]

En síntesis, Pitirre arguyó que, durante el trámite administrativo presentado ante el Negociado de Impuesto al Consumo del Departamento de Hacienda, (en adelante, Negociado), en múltiples ocasiones le denegaron la solicitud de certificado de revendedor al amparo de la Ley Núm. 40-2013. En otra instancia, Pitirre alegó que, solo le habían ofrecido realizar un plan de pago de deuda. En lugar de emitir el certificado que había solicitado Pitirre, el querellado le solicitó al Oficial Examinador que desestimara la *Querella* toda vez que, el certificado solicitado por Pitirre no era necesario luego de la aprobación de la Ley Núm. 40-2013, por lo que la controversia en el caso se había tornado en académica. A estos fines, Pitirre adujo que, la solicitud de desestimación radicada por el *querellado* fue acogida por el Oficial Examinador, sin adjudicar la controversia de conformidad con el expediente administrativo.[6]

Pitirre señaló que, tan pronto fue notificada la *Resolución* emitida por la Secretaría de Procedimiento Adjudicativo, comenzó a realizar gestiones para obtener el nuevo certificado de revendedor, pero estas no tuvieron éxito. No obstante, tanto antes como después de desestimada la *Querella*, Pitirre adujo que continuó radicando la planilla mensual de IVU, en la que reclamaba crédito por el impuesto sobre la venta que había pagado cuando importaba los artículos para la reventa. La parte apelante añadió que, la Ley Núm. 40-2013 fue derogada en el 2016, pero que se mantuvo el impuesto sobre la venta, por lo que Pitirre regresó al Departamento de Hacienda a solicitar que se expidiera el certificado de revendedor que había estado solicitando desde el 2013. Intimó que, igual que había

---

[5] *Íd.*, pág. 40.
[6] Apéndice del Recurso de Apelación, pág. 7.

ocurrido anteriormente, se le indicó verbalmente que sus solicitudes no serían recibidas.

Cuando el Sistema Unificado de Rentas Internas (en adelante, SURI) entró en vigor, a través de éste, Pitirre nuevamente volvió a solicitar el certificado de revendedor en donde se le indicó que dicho certificado no podía ser emitido puesto a que adeudaba impuesto sobre la venta al Departamento de Hacienda. Pitirre sostuvo que, entendía que no adeudaba impuesto alguno al Departamento de Hacienda ni había recibido notificación a esos efectos, por lo que acudió al Negociado a solicitar información. Alegó que, los funcionarios le indicaron que adeudaba impuesto sobre la venta y que las deudas eran finales. Empero, Pitirre señaló que la parte apelada había eliminado todos los créditos que había reclamado en las planillas de IVU que había radicado desde el año 2013, por el impuesto que había pagado sobre los artículos terminados que importaba para la reventa. También, sostuvo que el Secretario de Hacienda había revertido las revisiones de deuda que había hecho a solicitud de Pitirre.[7]

En resumen, Pitirre esgrimió que, el Secretario de Hacienda descartó la *Resolución* que había emitido la Secretaría de Procedimiento Adjudicativo del Departamento de Hacienda, revirtió las determinaciones que había emitido anteriormente y procedió a registrar en SURI deficiencias de IVU a partir del 2013. Pitirre sostuvo que, todo ello lo hizo sin haber cursado notificación alguna que le permitiera agotar el procedimiento administrativo y/o judicial que se proveen en el Código de Rentas Internas de 2011 (Ley Núm. 1-2011). En adición, Pitirre adujo que mantuvo varias reuniones con empleados y funcionarios del Departamento de Hacienda con relación a dichas deudas y con el certificado de revendedor que

---

[7] *Íd.,* págs. 1-37.

había estado solicitando, sin que se diera contestación alguna a sus reclamos o se emitiera una determinación que le permitiera agotar los remedios administrativos.

La parte apelante radicó el 17 de marzo de 2017, una carta dirigida al señor Rafael Cruz, Director del Negociado de Servicio al Contribuyente, mediante la cual solicitó la condonación de la deuda. Empero, en el Departamento de Hacienda se le informó verbalmente a Pitirre que no sería emitido el certificado de revendedor, que las deficiencias registradas en SURI eran finales y el único remedio era poner la cuenta en rehabilitación para su pago total. Pitirre sostuvo que, al igual que había ocurrido anteriormente, la parte apelada no notificó determinación alguna al respecto.[8]

Arguyó toda vez que, no podía agotar los remedios provistos en el Código de Rentas Internas de 2011 debido a la falta de una notificación formal, el 22 de diciembre de 2020, Pitirre recurrió al Tribunal de Primera Instancia mediante un *Injunction* Permanente.[9] Pitirre alegó que, ni la *Contestación a la Demanda* ni la *Contestación a la Demanda Enmendada* que radicó la parte apelada cumplían con los requisitos de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, en específico, en cuanto a la forma de negar las alegaciones de la demanda.[10]

El 11 de octubre de 2022, se llevó a cabo una *Vista de Estado de Procedimientos*. **La parte apelada aceptó que tenía que emitir el certificado de revendedor que había estado solicitando Pitirre desde el 2013 y, por tanto, tendría que procesar las planillas de impuesto sobre la venta que había radicado Pitirre desde el 2013 hasta el 2022.**[11] **Como resultado del mencionado proceso**, **el apelado canceló todas las deudas que había registrado en SURI**

---

[8] Apéndice del Recurso de Apelación, págs. 201-215.
[9] *Íd.*, págs. 1-61.
[10] *Íd.*, págs. 127-141.
[11] *Íd.*, págs. 201-215.

**desde el año 2013 hasta el año 2022 y determinó que Pitirre había pagado en exceso impuesto sobre la venta por la suma de $98,000.000 y así lo registró en SURI**.[12] No obstante, la parte apelada no había podido determinar cómo sería realizado la devolución del dinero pagado en exceso.[13]

Se desprende de la *Minuta* suscrita por el Tribunal, donde asistió y participó el señor Rafael Cruz Santiago, Sub-Secretario Auxiliar de Rentas Internas y Política Contributiva. **Que este admitió bajo juramento que "la última vez que verificó la cuenta el crédito era de $92,000.00**".[14] A su vez, explicó lo que era la diferencia entre la investigación del crédito y la investigación de conceder el reintegro. Finalmente, el licenciado Jiménez Romero informó que:

> para que aplique la disposición del código que está citando la parte demandante necesita una determinación de la agencia que no se ha hecho, porque se concedieron ciertos créditos que se reflejaban en el sistema dando por buena la información que tenían en el sistema no realizando un proceso de auditoria donde se toman en cuenta las facturas de los pagos y explica.[15]

Ante esta situación, el foro de origen concedió un término a Pitirre para mostrar causa de por qué no debía ser desestimado su demanda por ya haberse cumplido el reclamo solicitado. La parte apelada solicitó la desestimación de la *Demanda*. Basó sus argumentos en la doctrina de academicidad y planteó que: (1) los remedios solicitados por Pitirre en la Demanda habían sido concedidos (se había emitido el certificado de revendedor efectivo el 2013 y habían cancelado las deficiencias registradas en SURI); (2) Pitirre no había solicitado en la *Demanda* el remedio del reintegro del impuesto pagado en exceso; (3) Pitirre debía regresar a la agencia a solicitar su reintegro al amparo del Código de Rentas Internas

---

[12] *Íd.,* págs. 201-214.
[13] *Íd.,* págs. 191-195.
[14] *Íd.,* págs. 197-200.
[15] *Íd.,* pág. 199.

Sección 4050.05 (a), 13 LPRA sec. 32125(a), pues no se había emitido determinación alguna en cuanto al reintegro solicitado y (4) que la disposición del Código de Rentas Internas de 2011 Sección 4050.05 (d), 31 LPRA sec. 32125(d), en la que Pitirre basaba su reclamo no aplicaba.[16]

Por su parte, Pitirre argumentó que el pago en exceso había surgido mucho después de radicada la *Demanda* en el caso de epígrafe como resultado de que la parte apelada había aceptado que Pitirre tenía razón en cuanto a los remedios reclamados en la *Demanda* y que, por tal razón, de conformidad con lo dispuesto en la Regla 42.4 de Procedimiento Civil, 32 LPRA Ap. V. R. 42.4, el Tribunal de Primera Instancia venía obligado a conceder el remedio del reintegro del impuesto pagado en exceso. Esbozó a su vez, que quien determinó que Pitirre había pagado impuesto sobre la venta en exceso había sido la propia parte apelada, por lo que era de aplicación el inciso (d) de la Sección 4050.05 del Código de Rentas Internas de 2011, *supra*.

Pitirre intimó que, en esta parte de la mencionada Sección del Código de Rentas Internas, *supra*, le impone al Secretario de Hacienda la obligación de reintegrarle a los contribuyentes el impuesto sobre la venta pagado en exceso o indebidamente cuando es el mismo Secretario de Hacienda quien determina que el contribuyente ha hecho un pago indebido o en exceso. Arguyó que, a base de (1) el procesamiento de las planillas de impuesto sobre la venta radicadas a partir del 2013, (2) la cancelación de las deficiencias que aparecían registradas en SURI desde el año 2013, (3) el haber registrado en SURI el pago en exceso y (4) el haber cobrado del pago en exceso que le había impuesto a Pitirre, se demostraba que el Secretario de Hacienda había emitido una

---

[16] *Íd.,* págs. 216-226, 249-253.

determinación en cuanto a que Pitirre había pagado impuesto sobre la venta en exceso y, finalmente, (5) que no procedía la desestimación de la *Demanda,* toda vez que su controversia era una viva y justiciable, es decir, el reembolso del pago en exceso.[17]

Después que las partes presentaron escritos en apoyo de sus planteamientos y alegaciones, el 9 de junio de 2023, el TPI dictó *Sentencia* desestimando la *Demanda.*[18] El foro de origen argumentó que no tenía necesidad de formular determinaciones de hechos ni conclusiones de derecho a tenor con la Regla 42.2 de Procedimiento Civil, *supra,* y que adoptaba por referencia y acogía los argumentos presentados por la parte apelada en su solicitud de desestimación y en la dúplica presentada, los cuales hacia parte íntegra de la *Sentencia.*

Insatisfecha con la determinación realizada por el TPI, el 10 de julio de 2023, Pitirre presentó este recurso de apelación en el cual señaló la comisión de los siguientes errores:

> Erró el Honorable Tribunal de Primera Instancia al desestimar la demanda por el fundamento de que Pitirre tenía que agotar el remedio administrativo de reclamación de reintegro de la Sección 4050.05 (a) y esperar a que el demandado-apelado emita una notificación final, cuando el remedio aplicable es el de la Sección 4050.05 (d) del Código de Rentas Internas de 2011, pues fue el demandado-apelado quien *motu proprio,* determinó que Pitirre había pagado impuesto sobre la venta y uso en exceso.
>
> Erró el Honorable Tribunal de Primera Instancia al no incluir en la Sentencia el remedio del reintegro del impuesto sobre la venta pagado en exceso por Pitirre, según lo requiere la Regla 42.4 de Procedimiento Civil de 2009.
>
> Erró el Honorable Tribunal de Instancia al desestimar la demanda de epígrafe sin haber aclarado que la desestimación está limitada al remedio del reintegro del impuesto pagado en exceso por Pitirre, pues el demandado-apelado ya había aceptado que Pitirre tiene derecho a los remedios que originalmente solicitó en la demanda en cuanto a la expedición del certificado de

---

[17] *Íd.,* págs. 230-246.
[18] *Íd.,* págs. 291-292.

revendedor y la cancelación de las deficiencias registradas en Suri.

Examinado el recurso en su totalidad y con la comparecencia de las partes, procedemos a establecer el derecho aplicable y resolver.

**-II-**

**-A-**

En nuestro ordenamiento jurídico, la doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial que se circunscribe a que los tribunales, discrecionalmente, se abstengan de revisar la actuación de una agencia hasta tanto la parte afectada por dicha actuación agote todos los remedios administrativos disponibles, de manera tal, que la determinación administrativa refleje la postura final de la agencia. *Miranda Corrada v. DDEC,* 211 DPR 738, 746 (2023*); Colón Rivera et al. v. ELA*, 189 DPR 1033, 1057 (2013). De ordinario, su aplicación se realiza en aquellos casos en los cuales una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible. *Procuradora Paciente v. MCS*, 163 DPR 21, 35 (2004). La misma se invoca para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que luego recurrió al foro judicial, aunque aún tenía remedios administrativos disponibles. *Mun. de Caguas v. AT&T*, 154 DPR 401, 408 (2001).

La necesidad de agotar los remedios administrativos antes de acudir al foro judicial es un requisito jurisdiccional que impide la intervención judicial hasta tanto no hayan sido agotados todos los remedios administrativos disponibles al nivel de la agencia. *Guzmán y otros v. ELA*, 156 DPR 693, 714 (2002). Esto es así, pues la determinación administrativa es la que reflejará la postura final de la agencia. De ahí que sea de particular importancia diferenciar los

propósitos que persiguen las doctrinas de jurisdicción primaria y la de agotamiento de remedios administrativos. Sobre este particular, el Tribunal Supremo de Puerto Rico ha expresado:

> La doctrina de jurisdicción primaria no debe confundirse con la que requiere que se agoten los procedimientos administrativos antes de acudirse a los tribunales, aunque ambas son hermanas y persiguen el mismo fin: poner orden en la administración de la justicia y armonizar el funcionamiento de la rama judicial con el de su rama hermana, la ejecutiva. La doctrina que requiere que se agoten los procedimientos administrativos determina la etapa en la cual el litigante puede recurrir a los tribunales; la de la jurisdicción primaria determina qué organismo debe hacer la determinación inicial del asunto. *ELA v. 12,974.78 Metros Cuadrados*, 90 DPR 506, 513 (1964).

Además, la citada jurisprudencia expone la llamada doctrina de agotamiento de remedios administrativos la cual es, junto a la doctrina de jurisdicción primaria, una norma de autolimitación judicial. *Moreno Ferrer v. JRCM*, 209 DPR 430, 435 (2022). Esta doctrina implica que, antes de acudir a un tribunal, la parte que desea obtener un remedio deberá utilizar todos los medios administrativos disponibles, pues, de lo contrario, la revisión judicial no estará disponible. *AAA v. UIA*, 200 DPR 903, 913 (2018). Por lo que, necesariamente, "[e]l agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó, o que debió haber comenzado, pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el referido procedimiento administrativo". J.A. ECHEVARRÍA VARGAS, DERECHO ADMINISTRATIVO PUERTORRIQUEÑO, 4ta ed., Ediciones SITUM, Inc., 2017, pág. 71.

De esta forma, la agencia administrativa puede: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad, y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores

o reconsiderar el alcance de sus pronunciamientos. *AAA v. UIA*, 200 DPR 903, 914 (2018). Por tanto, la doctrina de agotamiento de remedios administrativos no puede ser preterida, salvo que se configure alguna de las limitadas excepciones, que se encuentran contenidas en el Artículo 4.3-Agotamiento de Remedios Administrativos; Relevo, a saber:

> **El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios**, o cuando se alegue la violación sustancial de derechos constitucionales, o **cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia**, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA sec. 9673. (Énfasis suplido).

A luz de lo anterior, se ha establecido que **"la parte que pretende acudir al foro judicial [debe] probar, mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos***". Procuradora Paciente v. MCS,* 163 DPR 21, 36 (2004); (Énfasis suplido). Esto, puesto que lo que pudiera resolver la agencia administrativa con relación a tales planteamientos constitucionales[,] también estaría sujeto a ser revisado en su momento por el Tribunal de Apelaciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico. 3 LPRA sec. 9655, (en adelante, LPAU).

Por consiguiente, ante los supuestos antes mencionados, se justifica el preterir el trámite administrativo, y el tribunal podrá conceder el remedio solicitado. De lo contrario, los tribunales deberán abstenerse de intervenir hasta tanto la agencia atienda el asunto. *SLG Flores-Jiménez v. Colberg,* 173 DPR 843, 851 (2008).

*-B-*

El Código de Rentas Internas de Puerto Rico de 2011, Ley Núm. 1 de 31 de enero de 2011, según enmendada, 13 LPRA sec. 30011 *et seq.* (en adelante, Código de Rentas Internas), dictamina lo concerniente al Impuesto sobre ventas y usos, así como lo relacionado a multas y penalidades por violación a sus disposiciones. El mismo establece en su Sección 4050.05 el procedimiento inicial sobre el reintegro de Impuestos Pagados.

> **Sección 4050.05. — Reintegro de Impuestos Pagados.** (13 LPRA sec. 32125)
>
> **(a)** *En General.* — **Una persona que ha pagado o se le ha cobrado indebidamente o en exceso el impuesto sobre ventas, podrá solicitar por escrito al Secretario el reintegro del mismo dentro del término y conforme a los procedimientos establecidos por el Secretario.**
>
> **(b)** *Solicitud de Reintegro.* — No se podrá reclamar en ninguna de las planillas del impuesto sobre ventas un reintegro por el impuesto sobre ventas que haya sido pagado o cobrado indebidamente o en exceso. El Secretario emitirá el formulario correspondiente para reclamar el reintegro. El derecho a recibir cualquier reintegro bajo las disposiciones de esta sección no es transferible, excepto a una entidad sucesora en una reorganización corporativa, el albacea, administrador, receptor, síndico en caso de quiebra, o cesionario en un procedimiento de insolvencia, de la persona con derecho al reintegro.
>
> **(c)** No se podrá reclamar reintegro alguno a menos que se presente al Secretario una solicitud bajo juramento dentro de los términos de tiempo establecidos para una reclamación de reintegro del impuesto pagado o cobrado indebidamente o en exceso conforme al Subtítulo F de este Código. La solicitud de reintegro deberá incluir como mínimo la siguiente información:
>
>> **(1)** el nombre y dirección de la persona que reclama el reintegro;
>> **(2)** una descripción de cada partida tributable;
>> **(3)** copias de las facturas de venta de las partidas tributables objeto de la reclamación de reintegro; y
>> **(4)** razón detallada por la cual se solicita el reintegro.

**(d) Cuando el Secretario apruebe una solicitud de reintegro, o cuando a "*motu proprio*" determine que el contribuyente ha hecho un pago en exceso o indebido, deberá acreditar la cantidad que le corresponda como reintegro a cualquier deuda contributiva del contribuyente. Cualquier remanente que resulte del total del impuesto pagado en exceso o indebidamente en los casos que el contribuyente no tenga deuda contributiva alguna deberá reintegrársele al contribuyente.**

[...]

Para una mejor comprensión de la antedicha sección, nos explica el profesor Díaz Olivo que:

El proceso de reintegro, al igual que el de deficiencia, se desdobla en dos etapas, a saber: (1) fase administrativa, y (2) fase judicial. **Para que el contribuyente pueda hacer uso de la fase judicial es necesario que el proceso administrativo de reintegro haya culminado con una denegatoria por parte del Secretario de Hacienda, la cual deberá ser notificada al contribuyente por correo certificado.**

**Por consiguiente, todo proceso de reintegro de contribuciones tiene que iniciarse, en primera instancia, ante el Secretario de Hacienda. La solicitud así presentada será considerada por un funcionario del Departamento de Hacienda, quien emitirá una determinación preliminar sobre el asunto y se la notificará al contribuyente.** Si el contribuyente no estuviera conforme con la determinación inicial del Departamento de Hacienda, tiene derecho a solicitar la celebración de una vista informal ante un funcionario distinto al que intervino inicialmente. En esta vista informal, el funcionario a cargo de dirigir el proceso-de ordinario un oficial examinador atenderá los planteamientos del contribuyente y emitirá un nuevo dictamen que constituirá la determinación final del Secretario de Hacienda. **Esta determinación será notificada al contribuyente mediante correo certificado e incluirá las debidas advertencias del derecho a presentar demanda dentro de los próximos treinta días.**

**El Departamento de Hacienda, en su notificación al contribuyente, viene obligado a informarle su determinación sobre el reintegro y además deberá advertirle los derechos que le asisten al culminar esa etapa procesal.** De esta manera, el contribuyente puede beneficiarse de los remedios que tiene disponibles en caso de que no esté satisfecho con la determinación. Solo así la referida notificación cumpliría con el rigor del debido proceso de ley. Una vez finalizado este procedimiento, comenzará la fase judicial de la reclamación de reintegro mediante la presentación de la demanda correspondiente, en el caso

de que el contribuyente no esté de acuerdo con la determinación final. C.E. DÍAZ OLIVO, DERECHO TRIBUTARIO: ASPECTOS CONSTITUCIONALES Y PROCESALES DE LA TRIBUTACIÓN,193-194 (2019).

El Tribunal Supremo de Puerto Rico ha reiterado dicho procedimiento a pesar de las diversas enmiendas que ha sufrido el Código de Rentas Internas. A estos efectos, la LPAU, *supra,* fue enmendada para añadirle, entre otras, ciertas disposiciones relativas a los procedimientos adjudicativos celebrados ante el Departamento de Hacienda y a la revisión judicial de las determinaciones de su Secretario. Es decir, se proveyó un tratamiento administrativo particular y aplicable exclusivamente a determinadas acciones ejecutadas por el Secretario de Hacienda. Actualmente, la Sección 3.1 de la LPAU, *supra*, contiene sobre los procedimientos la siguiente disposición:

> **(a)** Cuando por disposición de una ley, regla o reglamento o de esta Ley una agencia deba adjudicar formalmente una controversia, los procedimientos deberán regirse por las disposiciones de este Capítulo. No estarán incluidos los procedimientos voluntarios de resolución de disputas establecidos por ley o por reglamentos**.** Los procedimientos relativos a los asuntos y actuaciones del Secretario de Hacienda con respecto a las leyes de rentas internas del Gobierno de Puerto Rico se regirán por las siguientes normas:
>
>> (1) Un funcionario designado por el Secretario de Hacienda realizará una determinación preliminar;
>> (2) el contribuyente no conforme con la determinación preliminar solicitará una vista informal que presidirá un funcionario distinto al que realizó la determinación preliminar. Este realizará la determinación final por delegación del Secretario de Hacienda.
>
> Se considerarán procedimientos informales no cuasijudiciales y, por tanto, no estarán sujetos a esta Ley, [...]. En ninguno de estos procedimientos o las etapas en que éstos se dividan, se requerirá a la agencia que fundamente sus resoluciones con determinaciones de hecho y conclusiones de derecho. [...] 3 LPRA sec. 9641.

Sobre la Revisión Judicial, la LPAU, *supra,* también se armonizó la Sección 4.1 del mismo cuerpo legal para particularizar las disposiciones referentes a la revisión judicial de aquellas

órdenes, resoluciones y providencias dictadas por el Secretario de Hacienda con relación a las leyes de rentas internas del Estado Libre Asociado de Puerto Rico. 3 LPRA. sec. 9671. Así pues, se dispuso que estas determinaciones del Secretario de Hacienda serían revisadas mediante la presentación de una demanda y la celebración de un juicio *de novo*, ante la sala con competencia del Tribunal de Primera Instancia.

Como podemos observar, el Código de Rentas Internas ha sido armonizado con las disposiciones establecidas en la LPAU, *supra,* para poder sostener una sincronía en los procesos administrativos que se llevan ante las agencias. De manera que, los ciudadanos puedan obtener los resultados deseados en un trámite informal que promueva la conveniencia y economía tanto del ciudadano como del Departamento de Hacienda sin tener que acudir ante el foro judicial de manera prematura.

### -*III*-

Pitirre recurre ante nos alegando la comisión de tres (3) errores que procederemos a discutir en conjunto por estar intrínsecamente atados. En esencia, la parte apelante arguyó que el Foro a *quo* erró en desestimar la demanda incoada contra el Departamento de Hacienda, al determinar que debía agotar remedios administrativos aun cuando el Secretario de Hacienda reconocía *motu proprio* un exceso de pago. La parte apelante añadió que, el foro de origen debía incorporar en la *Sentencia,* lo referente al reintegro debía ser devuelto, esto al amparo de la Regla 42.2 de Procedimiento Civil, *supra. Le asiste la razón.*

Según resumimos en los hechos de este caso, Pitirre inició un trámite en la agencia el 9 de octubre de 2013. Luego de varios trámites procesales que abarcaron múltiples controversias sin una resolución o determinación final por parte de la agencia, el 22 de diciembre de 2020 Pitirre presentó la demanda de epígrafe. Incoado

el trámite judicial, **el Departamento de Hacienda ajustó las partidas económicas**, **y determinó** *motu proprio* **que Pitirre había hecho un pago en exceso sobre IVU, tal como lo exige la Sección 4050.50 (d)**; concedió los remedios solicitados en la demanda y solicitó la desestimación del recurso judicial arguyendo que el mismo se tornaba académico. Pitirre sostiene que el TPI debe ordenar el pago del reintegro solicitado, que fue admitido por la parte apelada, aunque el mismo no esté desglosado.

Como parte de la actividad que promueve la LPAU y el Código de Rentas Internas, *supra*, es necesario destacar que este trámite se provee expresamente en la Sección 4050.05. — Reintegro de Impuestos Pagados. [...]

> **(d) Cuando el Secretario apruebe una solicitud de reintegro, o cuando a "*motu proprio*" determine que el contribuyente ha hecho un pago en exceso o indebido, deberá acreditar la cantidad que le corresponda como reintegro a cualquier deuda contributiva del contribuyente**. **Cualquier remanente que resulte del total del impuesto pagado en exceso o indebidamente en los casos que el contribuyente no tenga deuda contributiva alguna deberá reintegrársele al contribuyente.**

Concluimos que, el foro primario incidió en desestimar la demanda sin ofrecer un remedio completo, debido a que Pitirre tiene derecho a recibir la cantidad que fue admitida en la vista del 11 de octubre de 2022, toda vez que esto fue aceptado por un funcionario de la agencia bajo juramento. **Por lo que, procede que la parte apelante de cumplimiento a la disposición establecida en el inciso (d) del Artículo 4050.50, sobre la cantidad de $92,000.00 que fue admitida por la parte apelada.** El Departamento de Hacienda ha prolongado injustificablemente el trámite y continúa entorpeciendo el mismo ante la negativa de querer reembolsar el exceso al contribuyente. Es necesario preterir el cauce administrativo toda vez que, al presente, el Secretario de Hacienda

no ha emitido una determinación sobre este asunto, ni le han efectuado el reembolso a Pitirre. En el caso de autos el determinar que habría que agotar el trámite administrativo evaluado al palio de las disposiciones del Artículo 4.3 de la LPAU, *supra*, entendemos que el remedio sería inadecuado, causaría un daño al exigir continuar litigando un asunto que ya ha sido aceptado por la agencia y el inciso (d) del Artículo 4050.50 del Código de Rentas Internas, *supra*, provee para una resolución completa para ello. Además, en el caso particular ante nos entendemos que el agotar el remedio administrativo causaría una dilación excesiva como ha ocurrido hasta el momento en los procedimientos.

Ciertamente, la terminología establecida en el Código de Rentas Internas en la Sección 4050.05(d), promueve que la agencia agilice los trámites administrativos, por lo que constituiría una actuación irracional no hacer un desembolso sobre la cantidad que fue admitida. En resumen, ante la necesidad de preterir el trámite administrativo, la agencia viene obligada a pagar la cantidad admitida *motu proprio* a Pitirre en la vista celebrada. Si existe un exceso a la cantidad admitida, la agencia estará obligada a notificar al contribuyente la determinación sobre el exceso y a realizar el trámite correspondiente sin dilación alguna.

### -IV-

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, *revocamos* la *Sentencia* apelada y se le ordena al Departamento de Hacienda realizar el pago por la cantidad de $92,000.00, cuantía que fue admitida en la *Vista* del 11 de octubre de 2022, según se desprende de la *Minuta* del TPI, así como cualquier otra suma adicional que surja, por concepto del pago del reintegro del impuesto sobre venta y uso que Hacienda determinó fue pagado en exceso por Pitirre más los intereses acumulados hasta la fecha del reintegro.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del

Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones