ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| OFICINA INDEPENDIENTE DE PROTECCIÓN AL CONSUMIDOR En Representación del CONSUMIDOR MARÍA GONZÁLEZ SOSA<br><br>Parte Recurrida<br><br>v.<br><br>LUMA ENERGY, LLC Y LUMA ENERGY SERVCO, LLC<br><br>Parte Recurrente | TA2025RA00009 | *Revisión Judicial* procedente de la Junta Reglamentadora de Servicio Público Negociado de Energía de Puerto Rico<br><br>Caso Núm. NEPR-QR-2024-0245<br><br>Sobre: Resolución Interlocutoria y Orden |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, hoy 7 de agosto de 2025.

LUMA Energy, LLC y LUMA Energy ServCo, LLC (LUMA), parte querellada y recurrente, comparece mediante un recurso de revisión judicial y solicita nuestra intervención para revocar la *Resolución Interlocutoria y Orden,* emitida y notificada el 22 de abril de 2025, por el Negociado de Energía de Puerto Rico de la Junta Reglamentadora de Servicio Público (NEPR). En el referido dictamen, el NEPR se declaró con jurisdicción para atender la *Querella* instada por la parte querellante y recurrida, Oficina Independiente de Protección al Consumidor (OIPC), en representación de la consumidora residencial, la Sra. María González Sosa (señora González Sosa).

**I.**

La presente causa se inició el 30 de diciembre de 2024, ocasión en que la OIPC instó una *Querella* ante el NEPR.[1] Alegó que, tras el paso del

---
[1] Apéndice, págs. 1-19.

huracán María, la Autoridad de Energía Eléctrica (AEE), en enero de 2018, cruzó temporeramente un cable por la propiedad de la señora González Sosa. Desde 2019, la querellante ha requerido la **reubicación del cable** por su rumbo original. Empero, ante la inacción, en 2023, requirió los servicios de la OIPC.

Luego de la intervención de la OIPC, se adujo que, en 2024, LUMA visitó la propiedad sita en Aguada y taló un árbol, por lo que el cable bajó de altura. Posteriormente, LUMA lo tensó. Según la reclamación, **LUMA indicó que necesitaba que un supervisor visitara el área, ya que debían colocarse varios postes**.

La OIPC narró, además, que indagó con LUMA la certificación de la existencia o no de una servidumbre a favor del querellado. En respuesta, el 23 de diciembre de 2024, LUMA emitió una *Certificación Negativa de Ancho e Información de Servidumbre de Paso Línea de Distribución en la propiedad que ubica en la Carretera PR-417 Km 79 Interior, Sector Juan Ramírez, Bo. Cerro Gordo, Aguada AGDA LR-01084-24_CE SPC: N: 256,440 / E: 124,989* (*Certificación Negativa...*).[2] En ésta, consignó que, en sus expedientes, "no se encontró evidencia de la adquisición, constitución e inscripción de servidumbre de paso para la línea que existe en el lugar". En el mismo documento, LUMA reconoció que la propiedad estaba afectada "**por una línea de distribución secundaria que discurre por el lado norte de la propiedad**". (Énfasis nuestro). Añadió que, de conformidad con un plano de 2011, realizado por el agrimensor Carlos Morales Arroyo (Lic. 6678) y suministrado por los propietarios, no se ilustraba el solar afectado por líneas ni infraestructuras eléctricas. Finalmente, en el referido documento acreditativo, LUMA informó que solicitó la evaluación a la Oficina Regional de LUMA en Mayagüez, custodio de la línea, para que "realice una inspección en el lugar y puedan emitir

---

[2] Apéndice, págs. 18-19.

sus recomendaciones en referencia a la relocalización del sistema eléctrico en el lugar".

El 12 de febrero de 2025, sin contestar la *Querella*, LUMA instó una *Moción de desestimación por falta de jurisdicción*.[3] El planteamiento de LUMA para alegar la falta de jurisdicción del NEPR se basó en que **la cuestión a resolver era si había o no constituida una servidumbre a su favor en la propiedad de la señora González Sosa**. Sostuvo que el caso debía dirimirse en los tribunales, ya que el derecho real de servidumbres legales atinente estaba regulado por el Código Civil de 1930, 31 LPRA sec. 1 *et seq.*, la Ley Núm. 143 de 20 de julio de 1979, *Ley de Servidumbres de Servicio Público de Paso*, 27 LPRA sec. 2151 *et seq.* (Ley Núm. 43-1979), y el *Reglamento de Servidumbres de la Autoridad de Energía Eléctrica* de 25 de enero de 2007 (Reglamento Núm. 7282).

Por su parte, en cumplimiento de *Orden*,[4] la OIPC se opuso a la petición de desestimación el 24 de marzo de 2025.[5] En esencia, aludió a la antes citada *Certificación Negativa...* emitida por LUMA, en la cual se acreditó la inexistencia de una servidumbre. Resaltó que del mismo documento se desprendía como hecho incontrovertible, no una alegación de la *Querella*, que una línea de distribución secundaria discurría por la propiedad de la señora González Sosa. Enfatizó que el asunto versaba sobre la "alta peligrosidad" de la referida línea eléctrica, la cual se encontraba "extremadamente baja, al punto que un adulto puede casi tocarla con la mano".[6]

Asimismo, para fundamentar la jurisdicción del NEPR sobre la causa, la OIPC citó varias disposiciones de la Ley Núm. 57 de 27 de mayo de 2014, *Ley de Transformación y ALIVIO Energético*, 22 LPRA sec. 1051,

---

[3] Apéndice, págs. 26-32.
[4] Apéndice, págs. 33-34.
[5] Apéndice, págs. 37-43.
[6] Véase, Apéndice, pág. 17.

*et seq.* (Ley Núm. 57-2014).[7] La OIPC argumentó que, **aun cuando existiese una servidumbre a favor de LUMA**, el asunto estaba dentro de los poderes del NEPR, basado en el elemento de peligrosidad, como previamente el ente administrativo lo había resuelto en otro caso.[8]

Evaluadas las posturas, el NEPR notificó el 22 de abril de 2025 la *Resolución Interlocutoria y Orden* recurrida.[9] Expuso que la Ley Núm. 57-2014, *supra*, le confería jurisdicción para dirimir la *Querella*, a base de la amplitud de la jurisdicción del ente administrativo y una interpretación liberal del estatuto. Concluyó:

> Los hechos alegados en la querella en autos plantean un asunto de peligrosidad por cablería eléctrica que afecta los intereses de la parte Querellante y que pudiesen atentar contra la seguridad de su propiedad. Asimismo, la controversia versa sobre la infraestructura del sistema de distribución y transmisión de la Autoridad. Dicha controversia incide directamente sobre el deber del Negociado de Energía de velar por el cumplimiento de la política energética del país, la cual incluye una adecuada implementación del sistema de distribución y transmisión de energía de la Autoridad.[10]

En consecuencia, declaró No Ha Lugar, la petición desestimatoria de LUMA y le concedió un plazo de quince (15) días al querellado para contestar la *Querella*.

Insatisfecho, LUMA solicitó una *Moción en solicitud de reconsideración* el 7 de mayo de 2025.[11] Insistió en que el NEPR adolecía de jurisdicción sobre la matera. **Planteó que el NEPR no podía atender**

---

[7] A saber, se citó el inciso (f) del Art. 1.2 de la Ley Núm. 57-2014; que dispone: "La infraestructura eléctrica será mantenida en condiciones óptimas para asegurar la confiabilidad y seguridad del servicio eléctrico". 22 LPRA sec. 1051 (f). Así como el inciso (a) del Art. 6.21 de la Ley Núm. 57-2014, el cual establece las obligaciones generales de las compañías de servicio eléctrico; entre éstas: "Toda compañía de energía certificada proveerá un servicio eléctrico adecuado, confiable, seguro, eficiente y no-discriminatorio al cliente o consumidor". 22 LPRA sec. 1054t (a). Además, hizo referencia a los incisos (a) y (d) del Art. 6.3 de la Ley Núm. 57-2014, sobre los poderes del Negociado de Energía: "(a) Fiscalizar y asegurar la cabal ejecución e implementación de la política pública sobre el servicio eléctrico en Puerto Rico; [...] (d) Fiscalizar la calidad, eficiencia y confiabilidad del servicio eléctrico provisto por cualquier compañía de energía certificada en Puerto Rico para garantizar una red robusta que atienda las necesidades de la isla". 22 LPRA sec. 1054cc (a) y (d).
[8] En referencia al caso núm. NEPR-QR-2022-0077.
[9] Apéndice, págs. 44-46.
[10] Apéndice, pág. 46.
[11] Apéndice, págs. 47-57.

**la controversia, sin que antes se dirimiera si LUMA adquirió mediante prescripción adquisitiva una servidumbre legal y si se había configurado o no una invasión de servidumbre**. Además de las disposiciones legales generales sobre servidumbres legales estatuidas en el Código Civil de 1930, *supra*, (derogado, pero vigente a los hechos alegados), LUMA fundamentó el derecho de usucapión en la Sección 2 de la Ley Núm. 143-1979, *supra*, la cual establece que, entre otros medios, las servidumbres legales pueden adquirirse por prescripción en el transcurso de veinte (20) años. 27 LPRA sec. 2152. De igual modo, aludió a la tipificación del delito menos grave y a la pena que le apareja que un tribunal puede imponer "a toda persona que instale, ubique o construya cualquier estructura en las servidumbres legales". Véase, Sec. 5 de la Ley Núm. 143-1979, 27 LPRA sec. 2155; y la Sec. VI, Art. D del Reglamento Núm. 7282. LUMA planteó lo siguiente:

> De la información pertinente a la controversia de epígrafe contenida en la base de datos de Gtech, surge que el poste primario con FID17710135 fue digitalizado el 28 de julio de 2003 y editado el 27 de abril de 2017. El mismo fue sustituido en algún momento por otro poste de metal e instalado a 18 pulgadas aproximadamente, a saber, dentro de la servidumbre. Además, el poste con FID1000228751 fue digitalizado el 22 de junio de 2007 y nunca ha sido editado. Finalmente, el tercer poste en el sector objeto de esta controversia, con FID17750060, fue digitalizado el 28 de julio de 2003 y editado el 13 de febrero de 2006. Esto, según el personal correspondiente de LUMA, nos revela que dichos postes existían (dos en el lugar actual y otro aproximadamente a 18 pulgadas) **<u>antes</u>** del huracán María.
>
> A la luz de lo anterior, existe una controversia real en torno a si se reubicó alguna línea eléctrica en el lugar; si, en efecto, la Autoridad de Energía Eléctrica adquirió alguna servidumbre de paso mediante prescripción adquisitiva e, incluso, sobre si existe invasión de servidumbre en este caso. Resulta evidente, pues, que dichos asuntos no pueden ser dilucidados ni resueltos por este Honorable Negociado de Energía.[12] (Énfasis en el original).

---

[12] Véase, Apéndice, pág. 55.

El 11 de junio de 2025, el NEPR notificó una *Orden* mediante la cual concedió a la OIPC un término de diez (10) días para replicar. No obstante, antes de que la parte recurrida presentara su postura y el NEPR se expresara sobre la reconsideración instada, el 20 de junio de 2025, LUMA compareció ante nos mediante el presente recurso; y señaló la comisión del siguiente error:

> **Erró el NEPR al declarar No Ha Lugar la *Moción de Desestimación por Falta de Jurisdicción* presentada por la Querellada-Recurrente, ya que los asuntos pertinentes al derecho real de servidumbre están regulados por leyes especiales que deben ser interpretadas por los foros judiciales.**

Ponderadas las alegaciones de la parte recurrente y el Derecho aplicable, eximimos a la parte recurrida de presentar su alegato, por virtud de la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR __ (2025). Al amparo de la norma procesal, este foro revisor tiene la facultad de prescindir de escritos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.

## II.

### A.

El Tribunal Supremo de Puerto Rico ha definido jurisdicción como el poder o autoridad que ostentan los foros adjudicativos para considerar y decidir los casos y las controversias ante su atención. *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019). Es norma reiterada que los entes judiciales o administrativos deben ser celosos guardianes de su jurisdicción, ya que no tienen discreción para asumirla si no la hay. Por ello, **las cuestiones relativas a la jurisdicción son privilegiadas** y, como tal, deben atenderse y **resolverse con preferencia y prontitud**. La falta de jurisdicción no es susceptible de ser subsanada. Más aún, ante un cuestionamiento de falta

de jurisdicción, el juzgador está compelido a auscultarla, toda vez que el planteamiento jurisdiccional incide directamente sobre el poder para adjudicar una controversia. Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. Por ende, **una vez una agencia o un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación de la causa**. *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, *supra*, págs. 499-500; además, *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Suffront v. A.A.A.*, 164 DPR 663, 674 (2005).

### B.

El Art. 4.002 de la Ley Núm. 201 de 22 de agosto de 2003, según enmendada, *Ley de la judicatura del Estado Libre Asociado de Puerto Rico de 2003*, 4 LPRA sec. 24 *et seq.*, dispone que el Tribunal de Apelaciones tendrá jurisdicción para revisar "como cuestión de derecho [...] las **decisiones finales** de los organismos y agencias administrativas". (Énfasis nuestro). 4 LPRA sec. 24u; además, Art. 4.006 de la Ley Núm. 201-2003, 4 LPRA sec. 24y. No obstante, aunque es necesario que la orden o resolución sea final para que sea susceptible de revisión por parte del Tribunal de Apelaciones, la Sección 4.3 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, según enmendada, 3 LPRA sec. 9601, *et seq.* (LPAUG), estatuye el **relevo de agotar los remedios administrativos** "cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa". 3 LPRA sec. 9673. En consonancia, nuestro Tribunal Supremo ha resuelto que **una situación clara de falta de jurisdicción de la agencia es una excepción a la norma de que sólo serán revisables ante el Tribunal de Apelaciones las resoluciones finales de una agencia administrativa**. *Comisionado*

*Seguros v. Universal*, 167 DPR 21, 30 (2006). Ello así, ya que "[e]s innecesario e injusto requerirle a una parte que litigue si el organismo administrativo carece de jurisdicción con el solo fin de que se cumpla con el requisito de finalidad. *Comisionado Seguros v. Universal, supra,* que cita a D. Fernández, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Ed. Forum, 2001, págs. 474-475; *J. Exam. Tec. Méd. v. Elías et al.*, 144 DPR 483, 492 (1997).

Claro está, no necesariamente toda alegación de ausencia de jurisdicción tendrá el efecto de eximir a una parte de agotar los procedimientos ante una agencia administrativa, ni implicará una aplicación automática de la excepción. *AAA v. UIA*, 200 DPR 903, 916-917 (2018); véase, además, *Comisionado Seguros v. Universal, supra*, págs. 30-31; *Colón Ventura v. Méndez*, 130 DPR 433, 444 (1992). El Tribunal Supremo de Puerto Rico ha opinado que "sólo en aquellos **casos en que la agencia carece realmente de jurisdicción es que el proceso administrativo se convierte en final** porque en la agencia no quedan asuntos o controversias pendientes por dilucidar. Sólo entonces, el Tribunal de Apelaciones podría revisar el asunto interlocutorio". (Énfasis nuestro). *AAA v. UIA, supra,* pág. 917. Ello así porque, ante una cuestión jurisdiccional*, "es a la propia agencia, salvo unas excepciones, a la que le corresponde hacer una determinación inicial de su propia jurisdicción"*. (Bastardillas en el original). *Id.*, que cita a *Colón v. Méndez, Depto. Recursos Naturales*, 13DPR 433, 444 (1992). Del mismo modo, corresponde a la parte que pretende acudir al foro judicial probar, **mediante hechos específicos y bien definidos**, que se debe prescindir de los remedios administrativos. *Procuradora Paciente v. MCS*, 163 DPR 21, 36 (2004). En armonía, el máximo foro ha adoptado tres criterios que se utilizarán ante un señalamiento de ausencia de jurisdicción de la agencia administrativa. En primer lugar, se debe considerar **el riesgo de que se ocasione un daño**

**irreparable** si el tribunal pospone su intervención. En segundo lugar, debemos evaluar el **grado de claridad con que surja la carencia o tenencia de jurisdicción**. En tercer lugar, debemos considerar la **pericia de la agencia** para dilucidar las cuestiones jurisdiccionales. *AAA v. UIA, supra,* págs. 917-918.

## C.

La Ley Núm. 57 de 27 de mayo de 2014, *Ley de Transformación y Alivio Energético*, 22 LPRA sec. 1051 *et seq.* (Ley Núm. 57-2014), propende a la creación e implementación de una reforma energética con un servicio eléctrico adecuado, confiable, seguro y eficiente. Art. 6.21 (a) de la Ley Núm. 57-2014, 22 LPRA sec. 1054t (a). Por virtud del estatuto, se creó el Negociado de Energía de Puerto Rico o NEPR (también conocido por la Comisión de Energía) como un ente independiente especializado, encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico. Art. 1.3 de la Ley Núm. 57-2014 sec. 1051a (j).

Entre otras competencias, el NEPR tiene **jurisdicción primaria exclusiva** sobre los casos y controversias en los que se plantee el incumplimiento con la política pública energética de Puerto Rico, así como los casos y controversias en los que se alegue algún incumplimiento de la AEE u otra compañía que provea servicios, con cualquiera de los mandatos establecidos en la Ley Núm. 83 de 2 de mayo de 1941, *Ley de la Autoridad de Energía Eléctrica de Puerto Rico*, 22 LPRA sec. 191 *et seq.* Véase, Art. 6.4 (a) (3) (4) de la Ley Núm. 57-2014, 22 LPRA sec. 1054c (a) (3) (4). Asimismo, ostenta **jurisdicción general**, de naturaleza regulatoria investigativa y adjudicativa, sobre la AEE y cualquier otra compañía de energía certificada que rinda servicios dentro del Gobierno de Puerto Rico. Véase, Art. 6.4 (b) (1) de la Ley Núm. 57-2014, 22 LPRA sec. 1054c (b) (1). También tiene **autoridad para atender querellas de incumplimiento con**

**la política energética** por parte de aquellas personas naturales o jurídicas que infrinjan el estatuto en materia de energía eléctrica, o afecten la prestación de servicios eléctricos, o requieran la autorización del NEPR para llevar a cabo cualquier actividad bajo su jurisdicción, o cuyas acciones u omisiones resulten en el perjuicio de los intereses del ente administrativo. Art. 6.4 (b) de la Ley Núm. 57-2014, 22 LPRA sec. 1054c (b) (2-5).

Además, en aquello que compete al caso del epígrafe, por virtud del inciso (c) (1) del Art. 6.4 de la Ley Núm. 57-2014, *supra,* el NEPR ostenta la siguiente autoridad legal:

Artículo 6.4. — Jurisdicción del Negociado de Energía.
. . . . . . . .

(c) Querellas por incumplimiento con la política pública energética.

(1) A petición de alguna parte afectada con legitimación activa, y según se establece en esta Ley, **el NEPR podrá atender querellas en las que se alegue y reclame por el incumplimiento de una compañía de servicio eléctrico con la política pública energética del Gobierno de Puerto Rico**, según expresada en la "Ley de Política Pública Energética de Puerto Rico" y el derecho vigente. De igual forma, el NEPR podrá atender querellas sobre las transacciones o actos jurídicos relacionados con la compra de energía o con la compra de combustible; sobre contratos entre la Autoridad o su sucesora, el Contratante de la red de transmisión y distribución, los productores independientes de energía y las compañías de energía; sobre los casos y controversias entre estos; sobre las tarifas de trasbordo y cargos de interconexión; y en casos y controversias sobre trasbordo de energía eléctrica o interconexión entre la Autoridad, su sucesora o sus subsidiarias, o el Contratante de la red de transmisión y distribución, y toda persona que esté, o interese estar, conectada a la red de energía eléctrica dentro del Gobierno de Puerto Rico o toda persona con un interés directo o indirecto en esos servicios de energía eléctrica. 22 LPRA sec. 1054c (c) (1). (Reproducimos el énfasis conferido en el dictamen impugnado).

En cuanto a la interpretación del estatuto, el Art. 6.38, 22 LPRA sec. 1054ll, dispone que sus disposiciones "serán interpretadas liberalmente para poder alcanzar sus propósitos, y donde quiera que algún poder específico o autoridad sea dada a la Comisión, la enumeración no se

interpretará como que excluye o impide cualquier otro poder o autoridad de otra manera conferida a ésta".

**III.**

En este caso, LUMA alega que el NEPR adolece de jurisdicción. Sostiene que es imperativo resolver si existe o no una servidumbre a favor de la AEE, asunto de competencia judicial, en torno a la línea objeto del caso del título. Añade que tampoco existe forma de resolver la referida controversia sin determinar primero si se ha configurado o no una invasión de servidumbre. Es decir, aduce que "no cabe hablar de relocalizar la línea eléctrica [...] sin dilucidar lo pertinente al derecho real de servidumbre, en torno al cual el NEPR no tiene pericia alguna y que, además, está regulado por leyes especiales que deben ser interpretadas por los foros judiciales".[13]

Como cuestión de umbral, apuntamos que, aun cuando LUMA recurre de una determinación interlocutoria y este recurso de revisión judicial se instó antes que la parte recurrida presentara su postura y el NEPR emitiera su dictamen definitivo, la patente ausencia de jurisdicción sobre la materia de la agencia excusa a LUMA de agotar los remedios administrativos inconclusos. Veamos.

Según reseñado, LUMA reconoce que una línea de distribución secundaria discurre por el lado norte de la propiedad de la recurrida. En torno a esta situación y la evaluación realizada, concluyó que se requerían colocar varios postes para la correspondiente reubicación. Acerca de éstos, en la base de datos Gtech, se reflejó que el poste primario FID17710135 —digitalizado en 2003 y editado en 2017— fue sustituido por uno de metal e instalado aproximadamente a dieciocho (18) pulgadas, dentro de la servidumbre. Constan en Gtech el poste FID17750060 —digitalizado en 2003 y editado en 2006— y el poste FID1000228751, digitalizado en 2007.

---

[13] Véase, *Recurso de Revisión Judicial*, pág. 5.

Es decir, LUMA sostiene que estos postes existían previo al huracán María, por lo que, antes de reubicar la línea en controversia, es preciso establecer judicialmente si la AEE adquirió o no alguna servidumbre de paso legal, por prescripción adquisitiva. Incluso, debe contemplarse si la *Certificación Negativa...* emitida interrumpió algunos de los plazos requeridos por ley. Más aún, en el caso afirmativo de que haya operado la usucapión, también competería al foro judicial adjudicar si la remodelación del inmueble de la recurrida ha invadido o no la servidumbre legal.

Es sabido que la ley habilitadora de una agencia ejecutiva, en este caso la Ley Núm. 57-2014, es la que delimita la jurisdicción del ente adjudicador administrativo, es decir, el NEPR. De un examen minucioso de las disposiciones legales citadas en la determinación impugnada, bajo las cuales se asentó la jurisdicción de la agencia, es forzoso concluir que el NEPR adolece de jurisdicción sobre las materias que deben ser dirimidas. A saber, la existencia o no de servidumbres legales a favor del recurrente. Es decir, las contenciones son de estricto derecho, por lo que es el foro judicial a quien le corresponde retener la jurisdicción y resolver las cuestiones en disputa planteadas, ya que es innecesario el peritaje de la agencia. *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407, 430-431 (2012). Como se sabe, una agencia administrativa sólo puede realizar las funciones que se le han encomendado por legislación y aquéllas que surgen de su actividad o encomienda principal. *Amieiro González v. Pinnacle Real Estate*, 173 DPR 363, 371 (2008). Cuando una agencia no tiene un poder delegado, entonces, no tiene jurisdicción ni puede asumirla. Por consiguiente, cualquier actuación sobre la causa resultaría *ultra vires*. Ni siquiera la utilidad o conveniencia pueden sustituir el estatuto como fuente de poder delegado. Incluso, nuestro alto foro ha opinado que cualquier duda sobre la existencia de poder delegado a una agencia debe resolverse en contra de su ejercicio. *Torres Pagán et al. v.*

*Mun. de Ponce*, 191 DPR 583, 604 (2014); *Raimundi v. Productora*, 162 DPR 215, 225 (2004). Precisamente por lo anterior resulta superfluo agotar los remedios administrativos cuando se trata de un caso claro de falta de jurisdicción y el asunto en controversia es enteramente de la competencia judicial. *J. Exam. Tec. Méd. v. Elías et al., supra.* Aquí, a base de hechos específicos provistos por la base de datos Gtech, LUMA justificó el daño que le causaría el agotar remedios administrativos en los que el NEPR adolece de pericia; y cuyos asuntos no se contemplan en la Ley Núm. 57-2014, *supra,* ni siquiera partiendo de una hermenéutica liberal del estatuto.

Decididamente, el NEPR incidió al declararse con jurisdicción a base de una interpretación amplia y general por el mero hecho de alegar y reclamar el incumplimiento de LUMA con la política pública energética del Gobierno de Puerto Rico. Colegimos que el NEPR no ostenta jurisdicción para dirimir las controversias relacionadas con el invocado derecho real de servidumbres de paso legal, a favor de la AEE.

## IV.

En virtud de lo anterior, revocamos la *Resolución Interlocutoria y Orden* dictada por el Negociado de Energía de Puerto Rico de la Junta Reglamentadora de Servicio Público, por carecer de jurisdicción sobre la materia. En consecuencia, se desestima el caso número NEPR-QR-2024-0245.

Lo acordó y manda el Tribunal y lo certifica su Secretaria.

Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones