Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| JULIA FELIZ BARRERA<br><br>Apelante<br><br>v.<br><br>CARLOS ZAPATA QUINTERO H/N/N KINGS CONSTRUCTION & ALL REPAIR<br><br>Apelada<br><br>****************************<br><br>JULIA FELIZ BARRERA<br>Demandante<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, ET AL<br>Demandada | TA2026AP00076 | APELACIÓN<br>Procedente del Tribunal de Primera Instancia, Sala de ARECIBO<br><br>Caso Núm.:<br>AR2025CV02180<br><br>Sobre:<br>Daños por Vicios de Construcción Incumplimiento de Contrato<br>*************************<br><br>Caso Núm.:<br>AR2025CV02444<br><br>Sobre:<br>*Mandamus* |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de febrero de 2026.

El 7 de enero del año en curso, la Sra. Julia Feliz Barrera (Feliz Barrera o la apelante) acudió por derecho propio ante nos y nos solicitó la revocación de la *Sentencia* dictada el 15 de diciembre de 2025 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o foro primario).[1] Por virtud del aludido dictamen, el TPI desestimó la solicitud de *Mandamus* instada por la apelante, así como la *Demanda* en Daños y Perjuicios incoada por esta contra el Sr. Carlos Zapata Quintero h/n/c Kings Construction & All Repair (parte apelada).

---

[1] Aunque incorrectamente tituló su escrito como *Petición de Certiorari*, habiéndose recurrido de una sentencia que pone fin a todos los asuntos litigiosos del pleito, se trata realmente de una apelación y como tal fue acogida.

Estudiado el expediente ante nos, conforme nos autoriza a hacer la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, 215 DPR __ (2025), prescindimos de la comparecencia de la parte apelada. Así resuelto, procedemos a atender el recurso y resolverlo.

-I-

El 29 de octubre de 2025, la apelante presentó por derecho propio ante el foro primario *Demanda* sobre incumplimiento de contrato, negligencia profesional y daños contra la parte apelada; caso civil número AR2025CV02180.[2] En síntesis, alegó que, en septiembre del año 2024, las partes suscribieron un contrato para la demolición de un techo de madera y la construcción de dos techos nuevos de concreto armado, más la parte apelada incumplió el mismo. Según Feliz Barrera, la construcción realizada fue defectuosa, peligrosa y fuera de código y a consecuencia de ello, la estructura presentaba filtraciones constantes de agua, grietas en el concreto, crecimiento de moho negro, entre otros fallos.[3]

Posteriormente, específicamente el 31 de octubre de 2025, la apelante sometió ante el TPI *Moción de Aclaración Sobre Pérdida de Jurisdicción y Represalia Administrativa de DACo* en la que informó que en enero del 2025 había presentado una querella ante el Departamento de Asuntos del Consumidor (DACo) en relación con los daños estructurales y sanitarios causados por la parte apelada. Asimismo, informó que la agencia no había resuelto la querella dentro del término de ciento ochenta días (180) que la ley le impone y se quejó del trámite llevado a cabo por el DACo para atender su querella. Por las acciones señaladas, la señora Feliz Barrera argumentó que el DACo perdió jurisdicción sobre el asunto, por lo que le

---

[2] Cabe señalar que la apelante el 18 de enero de 2025 había presentado una querella ante el DACo por los mismos hechos ante la consideración del TPI. Procedimiento que se encontraba activo al momento de presentar la *Demanda*.
[3] Véase Entrada Núm. 1, SUMAC-TPI en el caso civil número AR2025CV02180.

solicitó al tribunal que así lo decretara, además de que reconociera que su demanda no constituía duplicidad de foro.[4]

Tras varios trámites que no son necesarios detallar, y en atención a cierta moción sometida por la apelante, el foro primario señaló audiencia para el 9 de diciembre de 2025.[5] Un día antes de esta fecha, Feliz Barrera presentó ante el TPI un recurso extraordinario de *Mandamus;* caso civil número AR2025CV02444. En la súplica de dicho escrito, solicitó que se expidiera el recurso y, entre más de treinta remedios adicionales, también pidió que se le ordenara al DACo a resolver su querella lo antes posible y a rembolsársele los gastos incurridos.

Así las cosas, la *Minuta* levantada durante la audiencia celebrada en el caso AR2025CV02180, recoge las siguientes instancias acaecidas durante la vista:

> "Al **"status conference"** comparece mediante videoconferencia y por derecho propio la **Sra. Julia Feliz Barrera** (demandante). No comparece la parte demandada ni representación legal alguna.
>
> El Juez solicita a la parte demandante que exprese su reclamo, según los hechos presentados en la demanda.
>
> La señora Feliz procede a informar los hechos presentados en la demanda. Acudió al Departamento de Asuntos del Consumidor (DACO) a presentar su reclamo. No se emitió determinación a esos efectos, ya que DACO cerró su caso por alegada falta de interés debido a que no pudo comparecer a la vista. Está en términos para presentar una reconsideración.
>
> El Juez indica que en la demanda incoada se hizo referencia a que existía una querella en DACO. Debido a que se presentó una querella ante DACO, **el Tribunal no puede adquirir jurisdicción** hasta que se finalice el caso en dicha agencia y la determinación sea final, firme e inapelable.
>
> A preguntas del Juez y bajo juramento, la señora Feliz expresa que aún no ha presentado la reconsideración ante el DACO, pero está en términos para poder radicarla.
>
> Se desestima la demanda incoada bajo doctrina de agotamiento de remedio administrativo.
>
> Se exhorta a la parte demandante a buscar orientación legal. Puede acudir a la oficina de Pro Bono para orientarse o buscar asistencia en las clínicas de las diferentes Facultades de Derecho.
>
> *(Prepárese sentencia)"*

---

[4] *Íd.,* Entrada #7.
[5] *Íd.,* Entrada #19.

(Énfasis en el original)

Luego de la audiencia, el TPI dictó la sentencia apelada en la que, luego de haber escuchado a la apelante, consolidó el reclamo de incumplimiento y daños con el de *Mandamus*. Además, resolvió no identificar razón o motivo de peso por el cual, a modo de excepción a la doctrina de agotamiento de remedio administrativo, debía arrestar el procedimiento instando ante el DACo. Inclusive, señaló no contar siquiera con una determinación administrativa final que le permitiera atender la falta de un razonamiento apropiado. En desacuerdo, el 23 de diciembre de 2025, la apelante instó reconsideración.[6] Ese mismo día, el foro primario dictó *Orden* mediante la cual se negó a reconsiderar. También reiteró la sentencia dictada.

Inconforme aun, la apelante acudió ante nos mediante *Petición de Certiorari* en la que señaló la comisión de los siguientes tres (3) errores:

ERROR I

Aplicar mecánicamente la doctrina de agotamiento de remedios administrativos, ignorando hechos sobrevenidos determinantes que eliminaban dicho requisito.

ERROR II

No evaluar ni adjudicar las excepciones expresas del Art. 4.3 de la LPAU, a pesar de que los hechos alegados- y documentados- las activaban claramente.

ERROR III

Negar reconsideración sin análisis pertinente, a pesar de que:

- DACO cerró el caso sin adjudicación.
- El Tribunal de Apelaciones cerró el recurso administrativo; y
- Persisten riesgos reales e irreparables documentados durante el trámite.

Ese día, también sometió una *Solicitud para Declaración de Indigencia.*

**Visto este documento, en el día de hoy le autorizamos a litigar como indigente**. Posteriormente, el 2 de febrero de 2026, Feliz Barrera sometió ante nos *Moción Informativa Acompañando Declaraciones Juradas.* Tal cual

---

[6] *Íd.,* Entrada #31.

arriba indicamos, resolvimos prescindir de la comparecencia de la parte apelada, por lo que a continuación, resolvemos.

**-II-**

*A.*

La Ley Núm. 38-2017 conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, según enmendada, 3 LPRA sec. 9601 (LPAU), define el ámbito de la revisión judicial. Conforme a la Secc. 4.2 del precitado estatuto, 3 LPRA sec. 9672, **solamente las órdenes o resoluciones finales dictadas por las agencias o funcionarios administrativos pueden ser revisadas judicialmente**. (Énfasis suplido.) La sección aludida establece, en lo pertinente, lo siguiente:

> **[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia** o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la **orden o resolución final de la agencia** o a partir de la fecha aplicable de las dispuestas en la sec. 9655 de este título, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. *Íd.* (Énfasis suplido.)

Nuestro Tribunal Supremo ha manifestado que la citada sección de la LPAU limitó nuestra facultad de revisión judicial a decisiones que cumplieran con los siguientes dos requisitos: (a) que fueran órdenes o resoluciones finales de la agencia, y (b) que la parte adversamente afectada hubiese agotado todos los remedios provistos por la agencia administrativa. *A.A.A. v. UIA*, 199 DPR 638, 657 (2018) citando a *A.R.Pe. v. Coordinadora*, 165 DPR 850, 867 (2005); *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 543 (2006); *Procuradora Paciente v. MCS*, 163 DPR 21, 34-35 (2004); *J. Exam. Tec. Med. v. Elías et al*, 144 DPR 483, 491 (1997).

Cónsono con lo anterior, se ha reconocido la doctrina de agotamiento de remedios administrativos como otra norma de autolimitación judicial. *Procuradora Paciente v. MCS*, *supra*. Esta determina "cuándo es el momento apropiado para que los tribunales intervengan en una controversia que [ha]

sido previamente sometida ante la atención de una agencia administrativa". *Guzmán y otros v. E.L.A.*, 156 DPR 693, 712 (2002). Esto permite que la agencia administrativa pueda: (1) desarrollar un historial completo del asunto; (2) utilizar el conocimiento especializado o *expertise* de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad; y (3) aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos. *Procuradora Paciente v. MCS*, *supra*, pág. 35.

Para que se pueda invocar la norma de agotamiento de remedios administrativos, tiene que haber "una parte, que instó o tiene instada alguna acción ante una agencia u organismo administrativo, [que] recurre a algún tribunal sin antes haber completado todo el trámite administrativo disponible". *Mun. de Caguas v. AT&T*, 154 DPR 401, 408(2001). En otras palabras, se invoca "para cuestionar la acción judicial de un litigante que acudió originalmente a un procedimiento administrativo o era parte de éste y que recurrió luego al foro judicial, aunque aún tenía remedios administrativos disponibles". *Íd.*

Cuando aplique agotar remedios administrativos, los tribunales deberán abstenerse de intervenir hasta tanto la agencia haya atendido el asunto. *S.L.G. Flores Jiménez v. Colberg*, 173 DPR 843, 851 (2008). Es decir, que no deben intervenir en controversias que están pendientes ante la agencia y aún falta completar el trámite administrativo. *Íd,* pág. 408-09. Esto también incluye el acudir al organismo administrativo apelativo de existir alguno. Secc. 4.2 de la LPAU, 3 LPRA sec. 9672.

Sin embargo, esta norma admite algunas excepciones que están contenidas en la Secc. 4.3 de la LPAU, la cual dispone que:

> El tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en

el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. Sección 4.3 de la LPAU, 3 LPRA sec. 9673.

Con respecto a lo anterior, se ha dicho que "[e]l mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo". *First Fed. Savs. v. Asoc. De Condómines*, 114 DPR 426, 438-439 (1983). Nuestro más alto foro ha reconocido que "para que proceda un reclamo por la violación de un derecho garantizado por la Constitución, a los fines de eludir el cauce administrativo, es necesario que se demuestre la existencia de un agravio de patente intensidad que justifique desviarse del mencionado cauce". *Mercado Vega v. U.P.R.*, 128 DPR 273, 286 (1991). Por lo tanto, **"la parte que pretende acudir al foro judicial [debe] probar, mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos"**. *Oficina del Paciente v. MCS*, *supra*, pág. 36.

**-III-**

Como arriba señalamos, la apelante acude ante nos para que revisemos y revoquemos la *Sentencia* dictada por el TPI en la causa de epígrafe. Con tal propósito, asevera que en la causa de epígrafe concurrían varias excepciones que justificaban no aplicar la doctrina de agotamiento de remedios administrativos. Específicamente, señaló que **luego de dictarse la sentencia**, ocurrieron varios hechos que no fueron evaluados en ese momento. Primero, que DACo declaró No Ha Lugar la reconsideración que había sometido ante su consideración y confirmó el cierre y archivo de su querella, por lo que el trámite administrativo culminó sin adjudicación sustantiva; no existía récord administrativo confiable. Segundo, que este Tribunal de Apelaciones archivó la revisión administrativa sin ordenar la

reconstrucción del expediente administrativo.[7] Según la apelante, estos hechos ocasionaban que insistir en el agotamiento de remedios administrativos al negarse a reconsiderar, era ilógico, pues el asunto administrativo terminó.[8]

A su vez, relata que, durante el trámite administrativo, sometió mociones ante el DACo alertando sobre los riesgos a la vida y salud presentes, documentándolos inclusive, sin que la agencia resolviera. Esta falta de atención a su reclamo, según la apelante, evidencia que el remedio administrativo era inadecuado e ineficaz y que constituía una de las excepciones reconocidas por la LPAU a dicha exigencia, por lo que requerir su agotamiento al momento de dictarse la sentencia fue un error.

Al estudiar la sentencia apelada, apreciamos que el foro primario, luego de escuchar a la apelante durante la audiencia celebrada, no encontró razón por la que arrestar el procedimiento administrativo instado ante el DACo por la apelante. Más aún, en su decisión destacó no haber contado con el beneficio de la determinación final del DACo que la apelante informó se emitió en el proceso administrativo.

Tal cual arriba citamos y destacamos, en nuestro ordenamiento jurídico, quien pretenda acudir a los tribunales sin agotar los remedios administrativos, tiene la obligación de demostrar mediante hechos específicos y bien definidos que debe prescindirse de los remedios administrativos disponibles.

Hemos estudiado cuidadosamente los documentos sometidos por la apelante. También, para su beneficio, hemos evaluado el expediente judicial a través de SUMAC. Al así hacer, coincidimos con la apreciación

---

[7] Véase TA2025RA00390.

[8] La apelante en su escrito de cierta manera cuestiona la actuación del DACo por este finalizar el caso sin una adjudicación de las controversias levantadas e imputa falta de confiabilidad al expediente administrativo. **Sin embargo, tratándose el recurso de autos de una apelación y no una revisión administrativa, nos limitamos a evaluar la actuación del foro judicial; no así la del DACo, cuyo procedimiento administrativo- a la fecha de la sentencia recurrida dictada en el caso de autos- no había advenido final y firme.**

del TPI al dictar la sentencia apelada. No identificamos hecho específico argumentado- ni ante el foro primario, ni ante nosotros- mediante el cual Feliz Barrera demostrara que el TPI debía intervenir y asumir jurisdicción sobre los asuntos presentados por ella primeramente ante el DACo, de manera tal que en dicho instante no procediera la desestimación decretada.[9] **En la causa de epígrafe, tal encomienda recaía solamente en la apelante, por ser quien auscultaba la intervención judicial.**

Reconocemos que Feliz Barrera acudió por derecho propio ante el tribunal. No obstante, es importante recordar que las normas procesales de un litigio le aplican a todo ciudadano por igual, y no es relevante si se defiende por derecho propio o mediante representación legal. Véase, *Febles v. Romar,* 159 DPR 714, 722 (2003).

De otra parte, tampoco pasa desapercibido que, desde los inicios del pleito, el TPI le recomendó a la apelante conseguir representación legal. Así, por ejemplo, dos (2) días después de instarse la demanda de autos, el foro primario le exhortó y sugirió a Feliz Barrera que, por la complejidad del asunto, contratara abogado.[10] Similar consejo le brindó a la apelante mediante su *Orden* del 5 de noviembre de 2025[11] y aquella dictada el día 6.[12] Es más, conforme la sentencia denota, la audiencia pautada para el 9 de diciembre de 2025 se señaló con el fin de poderla orientar en cuanto a la contratación de un abogado y lo relativo a los requisitos de emplazamiento.[13] Esto, suponemos, en respuesta a las distintas mociones presentada por la apelante para solicitar la designación de un abogado de

---

[9] Nótese que a la fecha en que el tribunal celebró la vista, el DACo ya había dictado resolución final e inclusive, conforme a las expresiones de la apelante durante la audiencia, frente a la misma, esta se encontraba en término para presentar reconsideración la cual aparentemente había presentado. Véase *Sentencia*, anejo A del Apéndice. **Por lo tanto, la falta de adjudicación por parte de la agencia que señaló tanto en su demanda por incumplimiento de contrato, como en su solicitud de *Mandamus* quedó subsanada.**

[10] SUMAC TPI, Entrada Núm. 4.

[11] *Id.*, Entrada Núm. 14.

[12] En esta última, inclusive, señaló que, como regla general, en casos similares al de epígrafe los honorarios de abogado se contrataban contingentemente, exhortándole a auscultar la contratación de un abogado bajo estos términos en los que no se le cobraría por adelantado, ni por hora.

[13] *Id.*, Entrada Núm. 26, pág. 1.

oficio y para que se expidiera un emplazamiento por edicto.[14] Es allí, luego de escuchar a la apelante, que constató no tener ante sí argumentos por parte de esta que justificaran asumir jurisdicción sobre la controversia y secuestrarla de un foro administrativo ante el que fue sometida primero.

Ante la falta de argumentos válidos por parte de la apelante, no nos parece que existía razón por la que el foro primario debió asumir jurisdicción sobre el asunto ya planteado ante el DACo y dilatar el proceso ante su consideración. Tampoco identificamos motivo alguno por el cual estimamos existía razón por la que se equivocó al no reconsiderar su decisión. Al final de cuentas, en ese momento, ni la negativa del DACo a reconsiderar, ni la sentencia dictada por este Tribunal de Apelaciones en el caso TA2025RA00390 habían advenido finales y firmes.

**-IV-**

Por las razones antes dadas, confirmamos la *Sentencia* dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo en la causa de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[14] Véase SUMAC TPI, entradas número 2 y 4, entradas número 13 y 14, y entradas 18 y 19.